REGIS M. QUIRIN et al., Respondents-Appellants, v 123 APART-
MENTS CORP., Appellant-Respondent.

First Department, June 11, 1987

### APPEARANCES OF COUNSEL

*Richard M. Resnik* of counsel *(Peter A. Axelrod* with him on the brief; *Mandel & Resnik, P. C.,* attorneys), for appellant-respondent.

*Ira H. Zuckerman* for respondents-appellants.

### OPINION OF THE COURT

MILONAS, J.

The central issue in this action concerns the authority of defendant corporation to collect a transfer fee, otherwise known as a flip tax, on the sale of apartments in the building located at 123 West 74th Street in Manhattan. Plaintiffs, who are former residents, contend that, among other relief, they are entitled to a refund of the transfer fee paid by them at the closing of the sale of their apartment.

The facts may be stated as follows: In the latter part of 1977, the tenants were served with a proposed offering plan for the cooperative conversion of the building in question. The offering was later accepted for filing by the Department of Law of the State of New York and was presented to the tenants in April of 1978 as a 35% eviction plan under the statutory scheme then in effect. During the conversion process, the tenants formed a steering committee, retained counsel and then undertook negotiations with the sponsor. As a result of these negotiations, and at the tenants' demand, the sponsor agreed to include an amendment to the plan reducing the insider price per room and adding in the corporate bylaws a provision for an initial three-year transfer fee. Article VI, § 4 of the bylaws was, moreover, amended so that the board of directors was authorized to "fix a fee in addition to that presently specified * * * for transfers made within the first three years following the closing of title to the Apartment Corporation" in accordance with the terms described therein. Further, pursuant to article XII: "With the exception of changing the number of directors as provided in Section 1 of Article III of these by-laws, these by-laws may be amended, enlarged or diminished only by the affirmative vote of the holders of a majority of the shares of the corporation repre-

sented at any meeting of shareholders, or by the affirmative vote of two-thirds of the number of directors".

The amendment of the original bylaws establishing a transfer fee was accomplished with the unanimous consent of the steering committee membership and preceded the existence of any subscription agreements or the execution of proprietary leases. It should also be noted that plaintiff Regis Quirin was a member of the steering committee and that the transfer fee was deemed necessary because the building was in considerable physical disrepair and, therefore, the corporation's working capital fund had to be increased. Shortly after title to the subject building was transferred to defendant corporation, the board of directors concluded that the condition of the building was worse than had been originally indicated and that major capital improvements were mandated. The board thus determined that essential repairs could only be carried out if a continuous source of money was being generated. Consequently, on December 11, 1979, approximately one year after the closing, the board, acting in accordance with its power under article XII of the bylaws, amended the transfer fee provision by removing the three-year limitation.

Plaintiffs Regis and Ana Quirin, who had purchased their apartment for about $16,000, contracted to sell it for $243,000 in early 1984. Their proposed purchasers received approval from the board of directors, and the closing was scheduled for March 12, 1984. Although the closing took place on time, plaintiffs protested payment of the flip tax and were required, as a condition of the transfer of their shares, to sign a release of all claims relating to the imposition of charges and fees by the corporation. The instant lawsuit ensued. Plaintiffs subsequently moved for partial summary judgment on the first, second, sixth, seventh, eighth, ninth, tenth and eleventh causes of action contained in the complaint, as well as in connection with defendant's first, second and third affirmative defenses. In an oral decision, the Supreme Court, while observing that the release, if valid, constituted a bar to the action, found the elimination of the three-year period of the original transfer fee to be unauthorized since it was effectuated by the board of directors rather than the shareholders.

Both parties have cross-appealed from the Supreme Court's ruling, defendant from so much of the order that granted partial summary judgment to plaintiffs, and plaintiffs dispute the court's denial of the remainder of their motion. This court, however, finds that defendant is entitled to summary judg-

ment dismissing the first, second, and sixth through twelfth causes of action of the complaint notwithstanding its failure to cross-move for such relief (CPLR 3212 [b]). As we recently stated in *Friedman v Carey Press Corp.* (117 AD2d 568): "On a motion for summary judgment, the court may search the record and, if warranted, grant summary relief even in the absence of a cross motion *(Wehringer v Helmsley-Spear, Inc., 91 AD2d 585, *affd* 59 NY2d 688). The power to direct appropriate relief exists both at Special Term and on appeal *(Davis v Shelton,* 33 AD2d 707)" *(supra,* at 569). The reason for our holding in that regard is that under the leading cases of *Fe Bland v Two Trees Mgt. Co.* and *330 W. End Apt. Corp. v Kelly* (66 NY2d 556), the transfer fee at issue herein was properly imposed by defendant.

The Court of Appeals certainly did not conclude, as plaintiffs urge, that the adoption of a transfer fee is impermissible except where voted by a majority of the shareholders. Rather, what the court did in the two aforementioned companion cases was to set forth the circumstances under which such a flip tax may be imposed. According to the court (66 NY2d 556, 563, *supra):* "The relationship between the shareholder/lessees of a cooperative corporation and the corporation is determined by the certificate of incorporation, the corporation's bylaws and the proprietary lease under which a particular apartment is occupied, subject, of course to applicable statutory and decisional law. Inseparably joined, neither the corporate nor the leasehold attributes of the relationship can be viewed in isolation from one another *(Matter of State Tax Commn. v Shor,* 43 NY2d 151, 157). Even as to such normally corporate matters as the authority of the board of directors, therefore, it is not just the bylaws that are determinative; the relevant provisions of the related documents must be read together *(Brennan v Breezy Point Coop.,* 63 NY2d 1022, 1025; 4B Powell, Real Property ¶ 633.4)."

Thus, a transfer fee may validly be adopted so long as it is in compliance with the requirements of Business Corporation Law § 501 (c), involving the relative value of each share of the same class to each other, which is not here at issue; it conforms to the proprietary lease and is authorized by the bylaws or the proprietary lease. In the instant matter, the proprietary lease does not specifically exclude the collection of a flip tax, nor does the certificate of incorporation. There is in existence, as well, a bylaw which was enacted prior to the execution of any proprietary leases, that expressly provides

for the imposition of a three-year transfer fee. Another bylaw, also predating the execution of any proprietary leases, states that the bylaws may be "amended, enlarged or diminished" by approval of a majority of the shareholders or two thirds of the members of the board of directors.

Since these bylaws were in effect before the sale of any shares in the corporation, it is presumed that those who purchased had knowledge of the bylaws and of their legal consequence. *(Matter of William Faehndrich, Inc.,* 2 NY2d 468, 473; *Matter of Mansdorf v Unexcelled, Inc.,* 28 AD2d 44, 47.)* This is particularly the case in the instance of plaintiffs in that Regis Quirin was on the steering committee of the tenants' association. Furthermore, the amendment to the bylaws establishing the transfer fee in the first place was the result of extensive negotiations between the sponsor and the tenants' representatives and was desired, indeed insisted upon, by the tenants because of the deteriorated condition of the building. At the time that both this amendment and the bylaw giving the board of directors the right to amend or enlarge existing bylaws were adopted, the sponsor was the sole shareholder-incorporator of defendant corporation and possessed undisputed power to enact these provisions.

Considering the relevant documents together—the proprietary lease, the certificate of incorporation, and the bylaws of the corporation—it is clear that the transfer tax in question here did not violate the relationship between the corporation and the shareholders. In that regard, the flip taxes struck down by the Court of Appeals in *Fe Bland v Two Trees Mgt. Co.* and *330 W. End Apt. Corp. v Kelly (supra)* arose out of situations entirely different from the one before us now. Indeed, in those cases, the court held *(supra,* at 559-560): "A fee on the transfer of shares in a cooperative apartment corporation * * * may not be imposed by the corporation's board of directors, when the bylaws of the corporation authorize the board to impose on such a transfer and assignment only 'a reasonable fee to cover actual expenses and attorneys' fees of the Corporation, a service fee of the Corporation and such other conditions as it may determine'. Nor may a flip tax which is not in proportion to the shares held by the assignor be imposed under either the 'cash requirements' or 'assignment' provisions of the proprietary lease, or, in view of the mandate of Business Corporation Law § 501 (c) [subsequently amended by L 1986, ch 598] that each share of stock be equal

to every other share of the same class, by amendment of the bylaws."

In view of our decision that the transfer fee was properly imposed, it is unnecessary to reach any issues related to the release signed by plaintiffs.

Accordingly, the order of the Supreme Court, New York County (Ira Gammerman, J.), entered on October 11, 1985, which, *inter alia,* granted plaintiffs' motion for partial summary judgment on the first and second causes of action, denied plaintiffs' motion for partial summary judgment on the sixth, seventh, eighth, ninth, tenth and eleventh causes of action, denied plaintiffs' motion for partial summary judgment dismissing the first and third affirmative defenses and denied with leave to renew plaintiffs' motion for partial summary judgment dismissing the second affirmative defense, should be modified, on the law, to the extent of denying in full plaintiffs' motion for partial summary judgment, and summary judgment dismissing the first, second and sixth through twelfth causes of action of the complaint should be awarded to defendant, with costs and disbursements.

SANDLER, J. P., CARRO and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on October 11, 1985, unanimously modified, on the law, to the extent of denying in full plaintiffs' motion for partial summary judgment and awarding defendant summary judgment dismissing the first and second, and sixth through twelfth causes of action of the complaint. Defendant-appellant-respondent shall recover of plaintiffs-respondents-appellants $75 costs and disbursements of this appeal and cross-appeal. The order of this court entered on March 3, 1987 is vacated.