MILES MOGULESCU et al., Appellants, v 255 WEST 98TH STREET OWNERS CORP., Respondent.

First Department, January 12, 1988

## APPEARANCES OF COUNSEL

*Leonard R. Berson* of counsel *(Savrin & Berson,* attorneys), for appellants.

*Marc J. Luxemburg* of counsel *(Francis V. Imbornone* with him on the brief; *Snow Becker Krauss, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

MILONAS, J.

In October of 1981, the tenants at 255 West 98th Street in Manhattan were presented with a proposal to convert the building to cooperative ownership (the red herring). In response thereto, a tenants' committee was formed, which then retained an attorney and an engineer to assist the group in its dealings with the sponsor, and "no-buy" pledges were col-

lected. The offering plan or "black book" was distributed to the tenants, including plaintiffs herein, on or about March 25, 1983, following which negotiations ensued between the parties. One of the items discussed, apparently at the suggestion of the tenants' lawyer, was the imposition of a transfer fee, commonly known as a "flip tax". The committee's engineer had prepared a report evaluating the condition of the building that called for substantial corrective work, equipment replacement and capital improvements, and the tenants were concerned about the ability of the future cooperative association to obtain adequate financing to meet these needs.

An agreement was subsequently reached between the tenants' committee and the sponsor wherein, among other things, the insider purchase prices would be further reduced, the sponsor would make an increased contribution to the reserve fund, and a transfer fee would be adopted. Accordingly, on January 19, 1984, the sponsor enacted the First Amendment, which changed the proposal from an eviction to a noneviction offering plan, and contained a provision for a transfer fee as part of the entire funding arrangement worked out between the parties. Pursuant to the amendment, the contemplated transfer fee was to start at 15% of the profit realized upon the resale of apartments and decline, after the passage of the stipulated time period, first, to 10% and later to 5%. Specifically, paragraph 10 of the First Amendment stated that: "Article V, Section 6, Article VI, Section 5 of the By-Laws entitled 'FEES ON ASSIGNMENT' and 'FEES ON TRANSFER' respectively, shall be amended" to establish the described flip tax. The amendment also provided for a transfer fee with respect to the assignment of rights effected by tenants prior to the closing. On February 15, 1984, a tenants' meeting was held to review the terms of the First Amendment to the offering plan. Defendant asserts that some 20 of the building's 34 apartments were represented, including those of plaintiffs herein, and that, at the conclusion of the meeting, there was a unanimous vote to revoke the no-buy pledges and accept the plan. While plaintiffs claim a "heated" controversy erupted among the tenants over the transfer fee, and defendant responds that the only disagreement involved the amount of the flip tax, not its existence, it is undisputed that plaintiffs, as well as other tenants, executed subscription agreements for the purchase of the shares apportioned to their units, and the amended offering plan, including the transfer fee, was de-

clared effective on March 19, 1984. Title closed on June 1, 1984.

Plaintiff Mogulescu, who purchased his shares for $77,420.33, sold his shares and assigned his lease some 15 months later for $242,000. Plaintiffs Leonard Jay Alexander and Leslie R. Alexander purchased their shares for $76,075.56 and also sold, after 15 months, for $232,500. At the time of the transfer, Mogulescu was required to pay a flip tax of approximately $24,000 and the Alexanders about $21,000. These sums were paid by plaintiffs under protest. Additionally, Mogulescu was assessed a sublet fee, which defendant's Board of Directors enacted in June of 1984. In the instant action, commenced on or about October 17, 1985, plaintiff Mogulescu seeks to recover both the transfer fee and the sublet fee. Plaintiffs Leonard and Leslie Alexander demand return of the amount of the transfer fee. Defendant has counterclaimed for attorneys' fees and disbursements based upon a provision in the proprietary lease.

Following the joinder of issue, plaintiffs moved and defendant cross-moved for summary judgment. By decision dated October 7, 1986, the Supreme Court awarded summary judgment to defendant dismissing plaintiffs' first and third causes of action relating to the transfer fees, determined that a question of fact existed with respect to Mogulescu's claim for recovery of the sublet fee, and allowed defendant's counterclaim for legal fees only to the extent of its defending successfully against the cause of action for return of the sublet fee. Plaintiffs thereafter moved for renewal and rehearing so that the court could consider the applicability of the recent amendment to subdivision (c) of Business Corporation Law § 501 (L 1986, ch 598, § 1). Although the court granted renewal, upon renewal it adhered to its previous ruling. Plaintiffs have appealed.

■ It is plaintiffs' position that the leading companion cases of *Fe Bland v Two Trees Mgt. Co.* and *330 W. End Apt. Corp. v Kelly* (66 NY2d 556) require the flip tax at issue herein to be invalidated. Their argument is predicated upon the absence of specific authority for a transfer fee in the proprietary lease, notwithstanding the fact that the proprietary lease does not exclude the imposition of a transfer fee and, indeed, expressly provides that "[t]his lease incorporates by reference, as if the same were set forth herein at length, all the terms of Lessor's Plan to Convert to Cooperative Ownership * * * as amended prior to the date of this lease". Moreover, the subscription

agreement also incorporates by reference the terms of the offering plan wherein it is stated that "[t]he entire contract between us is set forth herein and in the Plan." There is also no merit to plaintiffs' contention that because the First Amendment, in referring to the bylaws, contained the words "shall be amended", it did not effect an immediate change but contemplated prospective amendment by leaving the matter open for future action.

Yet, even accepting the truth of plaintiffs' assertion that the concept of a flip tax created considerable dispute among the tenants, and notwithstanding that the First Amendment could have been more artfully drafted, the fact is that an examination of the relevant section clearly reveals that this provision was intended to be implemented at once. The First Amendment envisioned a series of changes in the terms of the offering plan as outlined in the original proposal, only one of which concerned the transfer fee. In each instance, the modification was made by use of the word "shall". Thus, the First Amendment stated that: "No eviction proceedings *shall* be commenced at any time against non-purchasing tenants for failing to purchase" and "On the closing date the Sponsor *shall* contribute to the working capital fund the sum of $132,800" and "The Sponsor *shall* reimburse the Tenants' Committee for all legal, engineering and other expenses incurred not to exceed $17,000" (emphasis added). The transfer fee section is, therefore, consistent with the rest of the First Amendment in employing the word "shall" to express mandatory directions. Furthermore, the transfer fee is described in great detail and with specificity, leaving nothing for the future action of either the shareholders or directors of the cooperative corporation. Finally, the provision itself prohibits amendment by the Board of Directors for a period of five years from the closing date, after which modification may take place.

As this court recently held in *Quirin v 123 Apts. Corp.* (126 AD2d 99) in reference to *Fe Bland v Two Trees Mgt. Co.* and *330 W. End Apt. Corp. v Kelly (supra),* the Court of Appeals therein "certainly did not conclude, as plaintiffs urge, that the adoption of a transfer fee is impermissible except where voted by a majority of the shareholders. Rather, what the court did in the two aforementioned companion cases was to set forth the circumstances under which such a flip tax may be imposed" *(supra,* 126 AD2d, at 102). In that connection, the various documents—the proprietary lease, the bylaws and the certificate of incorporation—must be read together to ascer-

tain whether a transfer fee has been validly enacted. Indeed, the facts of the instant matter are remarkably similar to those existing in *Quirin,* where the flip tax was sustained. In common with the situation in *Quirin,* the flip tax involved here was established by amendment to the offering plan after consultation with the tenants' representatives, and, at the time that the amendment was adopted, "the sponsor was the sole shareholder-incorporator of defendant corporation and possessed undisputed power to enact these provisions" *(supra,* at 103). If anything, this case presents an even stronger factual basis for upholding the transfer fee since, in contrast to *Quirin,* every document executed in regard to plaintiffs' acquisition of shares in defendant corporation incorporates by reference the provisions of the offering plan as amended.

There is, however, one issue crucial to the decision in *Fe Bland (supra)* which was not raised in *Quirin v 123 Apts. Corp. (supra)* but is pertinent to the matter before us. In *Fe Bland,* the Court of Appeals invalidated a resolution imposing a flip tax because, in part, it did not comply with Business Corporation Law § 501 (c). At the time of the ruling therein, section 501 (c) stated that: "Subject to the designations, relative rights, preferences and limitations applicable to separate series, each share shall be equal to every other share of the same class." Cooperative corporations such as that of defendant have only one type of shareholder. Since the flip tax in question in *Fe Bland* "differed depending upon whether the assignor was a purchaser from the sponsor or an outsider and whether he had been an owner for five years or more" *(Fe Bland v Two Trees Mgt. Co. (supra,* at 566), it was deemed to violate the equality-of-treatment requirement contained in Business Corporation Law § 501 (c). The transfer fee being challenged in the instant matter imposes assessments which vary depending upon the length of time after closing that the shareholders have entered into contracts of sale. Plaintiffs also assert that the equality-of-shares mandate is violated by the difference in voting rights between the holders of unsold shares (the sponsor or his assignees) and the other shareholders of defendant corporation. For instance, the holders of unsold shares may designate one director so long as they own at least 25% of the shares, and the holders of unsold shares do not need approval to transfer their shares or sublet apartments.

Subsequent to the Court of Appeals determination in *Fe Bland v Two Trees Mgt. Co.* and *330 W. End Apt. Corp. v*

*Kelly (supra)* and in reaction to that ruling, section 501 (c) of the Business Corporation Law was amended. According to the new provision: "Subject to the designations, relative rights, preferences and limitations applicable to separate series, each share shall be equal to every other share of the same class. With respect to corporations owning or leasing residential premises and operating the same on a cooperative basis, however, provided that maintenance charges, general assessments pursuant to a proprietary lease, and voting, liquidation or other distribution rights are substantially equal per share, shares of the same class shall not be considered unequal because of variations in fees or charges payable to the corporation upon sale or transfer of shares and appurtenant proprietary leases that are provided for in proprietary leases, occupancy agreements or offering plans or properly approved amendments to the foregoing instruments."

The parties to this litigation disagree both as to the construction and applicability of Business Corporation Law § 501 (c) as amended. Plaintiffs urge that section 501 (c) may not be given retroactive effect to sustain defendant's transfer fee but that, at any rate, the fee is invalid even under its amended form, citing the disparity in voting rights. With respect to the alleged inequality in voting rights, it should be noted that the bylaws of defendant corporation establish a system in which every shareholder of record is entitled to one vote for each share owned. While it is true that certain preferences and exemptions have been created for holders of unsold shares, the voting rights themselves are substantially equal per share. Further, the Senate memorandum prepared in connection with the amendment to section 501 (c) clearly indicates that it was not the intention of the Legislature that a corporation's authority to enact flip taxes be curtailed by the preferences routinely given to sponsors of cooperative conversion offerings.

█ In the view of the Senate sponsor, "since Section 501 (c) deals with matters of corporate finance only, the current practice of exempting sponsors from certain obligations and granting to them special benefits with respect to matters other than flip taxes is not affected by either Section 501 (c) or the proposed bill." Similarly, the Assembly's memorandum in support of legislation stated that: "By so amending the statute, it is intended to permit current practices to continue and existing provisions with respect to flip taxes to be cleared from the doubt raised by the FeBland decision. Thus, the current practice of basing flip taxes on profit, of treating shareholders

differently in some cases, and of exempting sponsors would not be subject to challenge in the State's courts." The statute, consequently, permits the imposition of a transfer fee which has been validly adopted pursuant to the terms of the offering plan, proprietary lease and bylaws, considered in conjunction with one another, despite the fact that the charges assessed may not be equal per share or that the holders of unsold shares retain certain benefits not available to the other shareholders. Accordingly, it is instructive to quote from the memorandum to the Governor submitted by the Attorney-General, who commented that:

"This bill amends Section 501 (c) of the Business Corporation Law to authorize an exception to the legal requirement that fees and charges be imposed on a proportional basis for shares of the same class and permit cooperative real estate corporations to impose fees or charges for resale of shares which are not equal per share.

"It is effective immediately, and applies retroactively to fees and charges imposed by cooperative real estate corporations prior to the passage of the bill."

The Attorney-General, discussing the impact of *Fe Bland v Two Trees Mgt. Co.* (66 NY2d 556, *supra)* and the attendant need for statutory amendment, proceeded to explain that the Court of Appeals ruling would "deprive cooperatives of an important source of revenue for major capital improvements. The case has also created uncertainty for cooperative corporation boards of directors concerning the potential of substantial liability to former shareholders for resale fees already collected, and for sponsors of buildings undergoing conversion to cooperative ownership concerning 'flip taxes' in offering plans now pending before the Department of Law." Both the Senate and Assembly memoranda emphasized that it was the purpose of the proposed act to undo any confusion resulting from the *Fe Bland* decision regarding the right of cooperative corporations to impose assessments on the sale or transfer of shares so long as those charges are properly implemented, and both memoranda make it evident that the new law was to be effective immediately and retroactively. Not only did the bill's sponsors expressly declare that the statute is applicable to all previously executed proprietary leases, but the Assembly memorandum noted that the amendment "is intended to permit current practices to continue".

Plaintiffs, nonetheless, argue that the statute may not be

accorded retroactive application since an action to recover a transfer fee is a constitutionally "vested right". As the Court of Appeals observed in *Matter of Chrysler Props. v Morris* (23 NY2d 515, 518): "When embarking on a journey into the realm of 'vested rights', it is dangerous indeed not to proceed with great caution for the concept is a fiction and hides many unmentioned considerations of fairness to the parties, reliance on pre-existing law, the extent of retroactivity and the nature of the public interest to be served by the law". Plaintiffs' purported "vested right" in the present matter derives almost entirely from a court interpretation of a legislative enactment —Business Corporation Law § 501 (c)—which has since been changed directly in response to that decision. Yet, on two occasions, the Court of Appeals has recently rejected the concept of a "vested right" in a statute which is later amended *(Matter of Consolidated Edison Co. v State Bd. of Equalization & Assessment,* 103 AD2d 453, *affd* 67 NY2d 783; *Blum v West End Assocs.,* 64 NY2d 939). Whatever rights plaintiffs may have possessed by virtue of the prior version of section 501 (c) of the Business Corporation Law were created by the Legislature and could be abrogated by it, particularly in view of the clear public interest which the Legislature determined would be served by the amendment.

■ Therefore, for all of the foregoing reasons, the Supreme Court appropriately granted summary judgment to defendant dismissing those causes of action which sought a refund of the transfer fees paid to it by plaintiffs. The court also correctly declined to dismiss the cause of action to recover the sublet fee paid by plaintiff Mogulescu, finding a question of fact as to whether defendant was warranted in adopting such a fee and whether the proper procedures were followed in doing so. However, the Supreme Court should have granted summary judgment to plaintiffs dismissing in its entirety the counterclaim for legal expenses in defending this action. The claim is based upon a paragraph in the proprietary lease which provides that "[i]f the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense * * * in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorney's fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent." Since a prerequisite to this clause is that

the lessee be in default and plaintiffs were never alleged to be in default, having paid under protest all fees assessed against them, defendant is not entitled to the recovery of any attorneys' fees or other costs sustained in defending the action.

Consequently, order of the Supreme Court, County of New York (Louis Grossman, J.), entered on April 1, 1987, which, *inter alia,* denied plaintiffs' motion for summary judgment on the first, second and third causes of action, granted defendant's cross motion for summary judgment dismissing the first and third causes of action, denied defendant's cross motion for summary judgment dismissing the second cause of action and dismissed in part defendant's counterclaim for legal expenses, should be modified, on the law, to the extent of granting plaintiff's motion to dismiss in its entirety defendant's counterclaim for legal expenses, and otherwise affirmed, without costs and disbursements.

Appeal from the order of the Supreme Court, County of New York (Louis Grossman, J.), entered on March 13, 1987, which granted plaintiffs' motion to renew and, upon renewal, adhered to its original determination, should be dismissed as academic, without costs or disbursements.

KUPFERMAN, J. P., SANDLER, CARRO and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on April 1, 1987, unanimously modified, on the law, to the extent of granting plaintiff's motion to dismiss in its entirety defendant's counterclaim for legal expenses, and otherwise affirmed, without costs and without disbursements. The appeal from the order of said court entered on March 13, 1987, is unanimously dismissed as academic, without costs and without disbursements.