Imre **LOWY** and Esther **Lowy, Plaintiffs,**

v.

**BAY TERRACE COOPERATIVE, SECTION VIII, INC., Defendant.**

**No. CV 85–2494 (RJD).**

United States District Court, E.D. New York.

June 16, 1988.

Nicholas R. Doman, New York City, for plaintiffs.

Donald N. David, Dreyer & Traub, New York City, for defendant.

## MEMORANDUM DECISION
## AND ORDER

DEARIE, District Judge.

Plaintiffs Imre and Esther Lowy, owners of an apartment in the Bay Terrace Cooperative, bring this diversity action against the defendant cooperative seeking declaratory relief that will enable them to sell their

apartment on the open market without paying defendant a transfer fee (commonly called a "flip tax"). The parties move for summary judgment. For the reasons stated below, the Court grants partial summary judgment to plaintiffs and partial summary judgment to defendant.

## FACTS

### A. The Co-op and Its Resale Policies

Defendant Bay Terrace (the Co-op or the Corporation) is a cooperative corporation created pursuant to Section 213 of the National Housing Act. The Co-op is governed by a Board of Directors, the members of which are shareholders in the Co-op. The power of the Board of Directors, and thus the relationship between the Co-op and its member shareholders, is governed by the Co-op's certificate of incorporation, its by-laws, and the occupancy agreement pursuant to which each member shareholder occupies an apartment in the Bay Terrace complex.

The by-laws and each occupancy agreement reserve to the Corporation an option to repurchase the shares of any shareholder who wishes to sell his or her stock and move out of the Co-op. If the Corporation exercises its option, repurchase is authorized at book value as determined by the Corporation; the Co-op is also expressly empowered to waive its option. The Co-op's Board has adopted two policies that purport to implement these provisions and govern the transfer of stock from present shareholders to newcomers. These substantially different resale policies, and their possible application to the anticipated sale of plaintiffs' apartment, are the focus of this dispute.

One policy, adopted in 1974, requires the selling shareholder, if the Corporation exercises its option to buy, to tender his or her shares to the Corporation for resale on the open market. After the shares are sold under this policy, the Co-op must remit to the selling shareholder a percentage of the profit realized on the sale. The percentage varies from zero to forty percent of the profit, depending on how long the shareholder has owned stock. In the Lowys'

case, it is undisputed that application of the 1974 Policy would deprive plaintiffs of sixty per cent of their profit.

Defendant later enacted "Rules and Regulations Regarding Sale of Stock" which became effective on December 1, 1976 (the "1976 Policy"). Unlike the earlier policy, the 1976 Policy merely requires a selling shareholder to pay a "waiver of option fee" or "flip tax" in return for the Co-op's agreement to waive its option to purchase and permit the shareholder to sell on the open market. The flip tax is set at a fixed cost per share, currently thirty-five dollars. The 1976 Policy applies to all stockholders except those who purchased their shares between 1974 and 1976. The latter group remains subject to the 1974 Policy. The 1974 Policy has in fact been applied to seven former shareholders who sold their shares after 1976. Cooper Aff. ¶ 42. In the Lowys' case, application of the 1976 Policy would require plaintiffs to pay a fee of $13,265.

### B. The Lowys and Their Apartment

The history of the Lowys' ownership of Bay Terrace shares and the occupancy of their apartment is essentially not in dispute. In March 1974, plaintiff Imre Lowy and his former wife, Adel Lowy, purchased 379 shares in the defendant Co-op. Two years later, in March 1976, Imre Lowy transferred his interest in the shares to Adel Lowy pursuant to a separation agreement. In June 1976, after Imre Lowy's divorce from Adel Lowy and his marriage to Esther Lowy, the defendant issued a new certificate for the 379 shares to Adel Lowy. In December 1978, Adel Lowy transferred the stock back to Imre Lowy. The Co-op approved this transfer in January 1979, and issued a new stock certificate and occupancy agreement in the names of Imre and Esther Lowy, plaintiffs herein. Despite the formal changes in ownership, Imre Lowy resided in the apartment continuously from March 1974 through July 1982, when he and his second wife retired to Florida.

There is a dispute between the parties concerning the 1978 stock transfer from

Adel Lowy to Imre Lowy. The plaintiffs allege that this transfer was for monetary consideration. The Co-op, however, states that when it issued the new stock certificate in January 1979, it had no knowledge that consideration had been paid.

The current controversy began to evolve in the summer of 1983, when plaintiffs notified the Co-op of their intention to sell their apartment. Apparently, the original source of dispute between the parties was the Co-op's attempt to exact brokerage fees and advertising expenses from the Lowys, on top of the sixty percent of the sale profits that the Co-op intended to keep pursuant to the 1974 Policy. *See* Cooper Aff.Ex. K, letters of 10/3/83 and 12/4/82. The Co-op's intransigence on this relatively minor point led the Lowys to retain counsel.

Plaintiff's counsel took the position that the Lowys' proposed sale must be governed by the terms of the 1976 Policy because they purchased their shares in 1979, as evidenced by the Board's 1979 issuance of a new stock certificate and occupancy agreement following the transfer of the shares from Adel Lowy to plaintiffs. The Lowys offered to pay the $13,265 flip tax as required by the 1976 Policy, and remain willing to do so. Lowy Aff. ¶ 12. The defendant Corporation refused to consent to the proposed sale, insisting that the 1974 Policy applies to the Lowys and entitles the Co-op to sixty percent of the sale profits.

### C. This Lawsuit

Plaintiffs countered by bringing this lawsuit, in which they seek a declaration that neither the 1974 Policy nor the 1976 Policy may lawfully be applied to the sale of their apartment and shares. The Lowys make three arguments that the 1974 Policy may not lawfully be applied to them:

(1) The 1974 Policy unlawfully discriminates between shareholders who purchased during 1974–1976 and all other shareholders, because all other shareholders are subject to the more favorable 1976 Policy.

(2) The 1974 Policy would be unlawful even standing alone, because by its terms it discriminates among shareholders based on how long they have held their shares.

(3) The 1974 Policy may not be applied to the Lowys because they purchased their stock in January 1979, and are therefore subject to the 1976 Policy by its express terms.

The Lowys further contend that the Co-op may not lawfully exercise its option to buy the Lowys' shares nor exact the waiver of option fee pursuant to the 1976 Policy because:

(1) The Corporation admits in its Answer that all shareholders covered by the 1976 Policy who paid the flip tax were granted a waiver of option. Answer to Amended Complaint ¶ 21. Therefore, to refuse the Lowys' offer of the flip tax and insist on exercising the repurchase option would be to discriminate unlawfully against the Lowys.

(2) The flip tax exacted under the 1976 Policy imposes on selling shareholders a greater burden of the maintenance costs of the Co-op than is imposed on non-selling shareholders, in violation of New York law and the occupancy agreement.

(3) The Board of Directors was not authorized to promulgate the flip tax embodied in the 1976 Policy.

### DISCUSSION

### A. Applicable New York Law

The Court must apply New York substantive law in this case. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The New York Court of Appeals ruled on the validity of flip taxes in *Fe Bland v. Two Trees Management Co.* and its companion case, *330 West End Apt. Corp. v. Kelly,* 66 N.Y.2d 556, 498 N.Y.S. 2d 336, 489 N.E.2d 223 (1985). The plaintiff in *Fe Bland* sold his apartment, paid the flip tax under protest and sued to recover it. In *Kelly,* the defendant paid a flip tax under protest, and the corporation sued to have the fee declared valid. The Court of Appeals invalidated both flip taxes.

The primary legal principle articulated in *Fe Bland* is that a cooperative may not impose a fee on its selling shareholders unless the shareholders have granted the board of directors the authority to do so. According to *Fe Bland*, shareholder approval of a transfer fee must be apparent from a reading of the relevant corporate documents that reflect the contractual terms agreed to by the shareholders and the cooperative. In both *Fe Bland* and *Kelly*, the corporate by-laws authorized only "a reasonable fee to cover actual expenses and attorneys' fees of the corporation, a service fee of the corporation and such other conditions as it may determine." The Court of Appeals held that this language did not authorize the imposition of a flip tax, concluding that the corporations were only empowered to assess fees directly related to the actual costs they incurred in transferring the stock and leases. The court also rejected the contention that the "cash requirements" provisions of the proprietary leases in *Fe Bland* and *Kelly* authorized the flip taxes imposed. The "cash requirements" provisions mandated that maintenance payments from shareholders be proportional to the number of shares owned, but the flip taxes at issue did not conform to that mandate. Reliance on the "cash requirements" provisions as authority for the flip taxes was therefore precluded, according to the Court of Appeals.

Moreover, the court ruled, the flip taxes could not be justified by resort to the inherent power of the corporation and the business judgment rule. The court acknowledged that the business judgment rule may permit the board to impose certain conditions upon shareholders in furtherance of legitimate corporate purposes, but concluded that the board did not have the authority to alter the contract between the parties in contravention of its express provisions. The court found that the specific references to "a service fee" on the transfer of shares, and the lack of any reference to an additional charge, limited the inherent power of the board to impose a flip tax and rendered the business judgment rule inapplicable to this *ultra vires* act.

The Court of Appeals also considered Fe Bland's argument that N.Y.Bus.Corp.Law § 501(c) (McKinney 1986) required any flip tax imposed upon the shareholders to be on a per share basis. When *Fe Bland* was decided and at the time this motion was filed, Section 501(c) provided that:

Subject to the designations, relative rights, preferences and limitations applicable to separate series, each share shall be equal to every other share of the same class.

Based on this language, the court found that a fee that varied depending on whether the shareholder was an original purchaser and whether he or she had held the stock for at least five years violated the statute's requirement that all shareholders owning the same class of stock be treated equally.

This aspect of the *Fe Bland* opinion elicited prompt response from the New York Legislature. On July 24, 1986, the following language was added to Section 501(c):

With respect to corporations owning or leasing residential premises and operating the same on a cooperative basis, however, provided that maintenance charges, general assessments pursuant to a proprietary lease, and voting, liquidation or other distribution rights are substantially equal per share, shares of the same class shall not be considered unequal because of variations in fees or charges payable to the corporation upon sale or transfer of shares and appurtenant proprietary leases *that are provided for in proprietary leases, occupancy agreements or offering plans or properly approved amendments to the foregoing instruments.* (emphasis added)

(McKinney Supp.1987). *See* Siegler, *Flip Taxes Revisited*, N.Y.L.J., September 2, 1987, at 2, col. 3 (citing Memorandum of Assembly, Bill No. A–9323 058739–A, Amended Memo dated June 20, 1986, no. 1429).

The added language, in effect, codifies the primary logic of *Fe Bland*, which is that flip taxes are legal if they are authorized in the documents that define the relationship between a cooperative and its

shareholders. Under Section 501(c) as amended, variations in a flip tax are legal even if not proportionate to share ownership, so long as they are provided for in an original or amended proprietary lease, occupancy agreement, or offering plan. Authorization granted only in the by-laws is not sufficient. The principal sponsor of the Bill, Assemblyman G. Oliver Koppell, addressed this issue and stated that he did not want the board, which he perceived as consisting of long-term shareholders who are less likely to sell, to be able to amend the by-laws with little difficulty and secure for itself the authority to impose a flip tax on all shareholders without their consent. Siegler, *supra*, at 2, Col. 3 (citing Transcript of Floor Debates, New York Assembly, Bill no. A–9329 058739–A, May 19, 1986, p. 8).

**B. Defendant's Unequal Treatment of Shareholders**

■ The existence of two resale policies simultaneously in effect at Bay Terrace results in the assessment on selling shareholders of wildly different costs per share. Under current market conditions, selling shareholders who happened to purchase their shares between 1974 and 1976 pay to the Co-op amounts much greater than the waiver of option fees exacted from all other selling shareholders. Such a discriminative system of flip taxes is illegal under N.Y.Bus.Corp.Law § 501(c), as amended, unless explicitly provided for in the proprietary lease, occupancy agreement, or offering plan. Nothing in those documents of the Bay Terrace Cooperative authorizes enactment of rules governing the sale of apartments that differ depending on when the shareholder bought the apartment. The language in the Occupancy Agreement that allows the Co-op to purchase a seller's apartment for book value cannot justify the disparity between the 1976 Policy's waiver of option fee and the 1974 Policy's forced tender of shares to the Corporation. The unequal treatment of shareholders spawned by the Co-op's dual resale policies is exactly the kind of material alteration of the contract between the shareholders and

the cooperative that *Fe Bland* and Section 501(c) forbid.

**C. The 1974 Policy**

■ As seen in the preceding section, the Co-op may not lawfully impose a dual set of resale policies. Moreover, the terms of the 1974 Policy preclude its lawful application even standing alone. The 1974 Policy exacts different percentages of sale profits from shareholders, depending on the number of years the shareholder has held stock. The Occupancy Agreement allows the Corporation to purchase an apartment for book value, but it does not permit the Co-op to, in effect, apply different definitions of book value to different shareholders. The varying treatment of shareholders embodied in the 1974 Policy therefore violates Section 501(c) and would do so even absent the added disparities created by the 1976 Policy.

The parties disagree on when plaintiffs' shares were "purchased" after Imre Lowy's separation from Adel, and thus dispute which of the two resale policies putatively applies to the plaintiffs. This dispute is, however, of no moment. The Court holds the 1974 Policy invalid as a matter of law, both on the Policy's own terms and as part of a discriminative dual set of resale policies. The 1974 Policy therefore cannot apply to the Lowys, regardless of when they "purchased" their shares. Thus the factual dispute cannot affect the outcome of the lawsuit and is not "material" within the meaning of Fed.R. Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

**D. The 1976 Policy**

The question remains whether Bay Terrace may collect the flip tax pursuant to the 1976 Policy if that Policy is applied to all shareholders, including the Lowys. Notwithstanding their apparent willingness to pay the $35 per share transfer fee, the Lowys press the claim that the 1976 Policy is invalid for the several reasons listed *supra*.

■ The Court agrees with the Lowys that, given the Board's admitted practice of waiving its option to purchase whenever the flip tax is tendered (except for shareholders to whom the Board applied the 1974 Policy), it would be unlawful for the Board to insist on exercising its option in the Lowys' case. Under the 1976 Policy as implemented, the option to purchase in lieu of accepting the waiver fee has indeed become a dead letter. However, this does not imply that the Lowys may refuse to pay the waiver fee.

■ *Fe Bland* and Section 501(c) protect shareholders from unilateral board action by ensuring that the board does not stray beyond the powers it was granted under the existing contract. Here, unlike in *Fe Bland*, the Occupancy Agreement is not silent on the subject at hand: it specifically provides for the Co-op's option to purchase at book value. The right to charge a reasonable fee in consideration for waiver of such a valuable option is implicit. *Meichsner v. Valentine Gardens Cooperative, Inc.*, 137 A.D.2d 797, 525 N.Y.S.2d 345 (2d Dept.1988). The option to purchase puts all prospective shareholders on notice that their right to earn a profit on their shares may be limited, though it does not give authorization for the kind of disparate treatment invalidated in the preceding two sections of this opinion. *See Mogulescu v. 255 W. 98th St. Owners Corp.*, 135 A.D.2d 32, 523 N.Y.S.2d 801 (1st Dept.1988); *Quirin v. 123 Apartments Corp.*, 128 A.D.2d 360, 516 N.Y.S.2d 218 (1st Dept.), *app. dism'd without op.*, 70 N.Y.2d 796, 522 N.Y.S.2d 112, 516 N.E.2d 1225 (1987). Thus the 1976 Policy meets the *Fe Bland* test that flip taxes be properly authorized.

The 1976 Policy also meets the equal treatment requirement of Section 501(c). (This result holds regardless of whether or not the amendment to Section 501(c) is applied retroactively, as the statute requires. Therefore, the Court need not decide plaintiff's contention—rejected by the court in *Mogulescu, supra*—the retroactive application of amended Section 501(c) is unconstitutional.) The waiver of option fee is a fixed amount per share. The total fee collected is thus strictly proportional to share ownership, and there is no discriminative treatment of owners of the same class of stock. The fact that the per-share amount of the flip tax may change over time does not violate Section 501(c), so long as any two shareholders who sell at the same time are treated equally. *305 E. 24th Owners Corp. v. Ruskin*, N.Y.L.J., Feb. 18, 1987, at 12, col. 7 (Sup.Ct.N.Y.County Feb.1987).

■ Plaintiffs assert, however, that the flip tax violates their Occupancy Agreement, which provides that "in no event shall the Member be charged with more than his proportionate share" of the Co-op's annual expenses. Occupancy Agreement Article One. The defendant has admitted, Cooper Dep.Tr. at 76, that the flip taxes paid are used to defray costs of the Corporation and to reduce monthly carrying charges to member shareholders. Plaintiffs argue that the flip taxes are therefore equivalent to extra carrying charges imposed on selling shareholders as compared to non-selling shareholders, in violation of the lease's proportionality requirement. However, as the Court of Appeals' analysis of the "cash requirements" provisions of the leases in *Fe Bland* suggested, "the flip tax is entirely different from a cash requirement" or carrying charge. *Grossman v. 322 W. 72 Apt. Corp.*, N.Y.L.J., Jan. 28, 1987 at 39, col. 3 (Sup.Ct.N.Y.County Jan.1987). The Bay Terrace Occupancy Agreement bars the imposition of disproportionate monthly carrying charges, but not the imposition of a duly authorized lump sum waiver of option fee.

The Court holds that the Co-op Board is authorized to require a waiver of option fee pursuant to the 1976 Policy. The fee so exacted does not violate Section 501(c) of the Business Corporation Law nor the Occupancy Agreement between the Lowys and the Co-op. The Co-op may lawfully require the Lowys to tender the fee before the Co-op agrees to waive its option to purchase the Lowys' shares.

### E. Subsidiary Issues

Defendant raises a number of collateral arguments in support of its cross-motion

for summary judgment. The Court finds these uniformly without merit.

### 1. Statute of Limitations

 Defendant argues that this suit is barred by the statute of limitations because plaintiffs' cause of action accrued either on December 1, 1976, when the 1976 Policy became effective, or on January 17, 1979, when the Co-op issued a stock certificate in plaintiffs' names. This position, if adopted, would require shareholders aggrieved by a Co-op's resale policies to bring declaratory judgment actions long before the shareholder had any present intention to sell, and thus long before a ripe case or controversy could be presented to a court. The Court has found no New York case imposing such a requirement.

Certainly, the statute cannot begin to run on the date the 1976 Policy became effective; neither Imre nor Esther Lowy owned any stock in the Co-op at that time. More fundamentally, however, the injury to the Lowys did not occur, and thus their cause of action was not complete, until they actually attempted to sell their apartment. *See Lewis v. Lewis*, 59 Misc.2d 525, 299 N.Y.S.2d 755 (Civ.Ct.City of N.Y.1969) (cause of action accrues after *both* violation of a right and resultant injury); *cf.* N.Y. Civ.Prac.Law § 206 (where demand is necessary to allow maintenance of action, limitations period runs from time when right to make demand is complete). To hold otherwise would subject shareholders to the risk of having their rights foreclosed long before they became aware of the concrete adverse impact of illegal resale policies. Because the Lowys filed this suit within two years of the time they first attempted to sell their shares in the Co-op, the action is timely under any potentially applicable statute of limitations. *See* N.Y.Civ. Prac.Law §§ 201 *et seq.*

### 2. National Housing Act

 Next, defendant argues that it is immune from the *Fe Bland* holding and Section 501(c) because Bay Terrace is a Federal Housing Administration cooperative formed pursuant to Section 213 of the National Housing Act. According to defendants, the Co-op was organized to meet a middle-class housing crisis and was never intended to be a profit-making venture or fall within the purview of Section 501(c). New York's statutory scheme, however, allows for no such exemption. The Cooperative Corporations Law provides that the Business Corporations Law applies to:

> every corporation heretofore or hereafter formed under this chapter, or under any other statute or special act of this state, or under laws other than the statutes of this state, which has as its purpose or among its purposes the cooperative rendering of mutual help and service to its members and which, if formed under laws other than the statutes of this state, would, if it were to be formed currently under the laws of this state, be formed under this chapter except a membership cooperative as defined in section three of this chapter, to which the not-for-profit corporation law shall apply.

N.Y.Coop.Corp.Law § 5 (McKinney Supp. 1988). This statute explicitly includes cooperatives that, like FHA cooperatives, were formed under the law of another jurisdiction but would be covered by the Cooperative Corporations Law had they been organized pursuant to New York State Law. The one exception in Section 5 is a membership cooperative, the definition of which excludes any cooperative that issues stock. N.Y.Coop.Corp.Law § 3(k). Thus, contrary to defendant's position, Bus.Corp.Law § 501(c) applies to the defendant Co-op. Regardless of the reasons this cooperative was organized, nothing in the statutes or case law even hints that shareholders in FHA middle income cooperatives are not protected by *Fe Bland* and Section 501(c). The Court detects in defendant's papers the rudiment of an argument that the National Housing Act preempts the type of state regulation invoked here, but the Court is utterly unpersuaded by that position and finds no authority to support it.

### 3. Waiver

 Defendant further argues that the Lowys waived their right to challenge the 1974 Policy when they expressly acknowl-

edged that they were subject to that Policy. The alleged waivers are contained in letters written by plaintiffs to the Co-op and its attorneys in 1983. In one letter, plaintiffs stated that the Co-op was to receive "sixty percent of the profits and we forty percent." Cooper Aff.Ex. K. Only after the plaintiffs sought legal advice in their dispute with the Co-op did they challenge the validity of the 1974 Policy.

Waiver results only from a voluntary and intentional abandonment of a known right. *Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 451 N.Y.S.2d 663, 436 N.E.2d 1265 (1982) (citing *City of New York v. State of New York*, 40 N.Y.2d 659, 389 N.Y.S.2d 332, 357 N.E.2d 988 (1976)).

> [I]t must be shown by the party claiming a waiver that the person against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his rights or of the facts upon which they depended. It cannot be said that a person waives that which he does not know is one of his rights prior to or at the time of the alleged waiver.

21 N.Y.Jur. *Waiver* § 96, at 135–36 (1961).

The Lowys' letters may evidence their belief at the time that they were bound by the 1974 Policy. They contain no intimation that the Lowys then knew of the right to equal treatment under Section 501(c). The evidence presented cannot sustain an inference of a knowing, voluntary and intentional waiver of rights. With respect to this issue, defendant has neither borne its burden of proving the absence of a material issue of fact in support of the Co-op's cross-motion nor presented proof adequate to raise a material issue of fact in opposition to plaintiffs' motion for summary judgment.

Similar logic defeats defendant's contention that the Lowys implicitly waived their right to object when, as shareholders, they accepted the benefits gained by the Co-op when the 1974 Policy was applied to seven other selling shareholders. "Implied waiver is a purely equitable doctrine which ... will be applied only on a demonstration of deliberate, informed abandonment of

known rights." 21 N.Y.Jur. *Waiver, supra,* at 136.

### 4. Breach of Occupancy Agreement

Finally, defendant asserts that plaintiffs have breached their Occupancy Agreement and thus forfeited their contractual rights. This argument is premised on plaintiffs' admission that they became residents of Florida in July of 1982 and have not used their Bay Terrace apartment as their primary residence at any time since. Lowy Aff.Ex. 8. Plaintiffs' move to Florida, the Co-op claims, violates Article Five of the Occupancy Agreement, which reads, in pertinent part:

> Article 5. Premises to Be Used for Residential Purposes Only.
>
> The member shall occupy the dwelling unit covered by this agreement as a private dwelling for himself and his immediate family, and for no other purpose, and may enjoy the use, in common with other members of the Corporation, of all community property and facilities of the project, so long as he continues to own stock of the corporation, occupies his dwelling unit, and abides by the terms of this agreement.

The meaning of this paragraph's express language is plain. As plaintiffs contend, Article 5 restricts a cooperative owner's use of a Bay Terrace apartment to residential purposes, but does not require an owner to use the apartment as his or her primary residence.

The quoted sentence has two independent clauses. The first clause, up to the word "purpose," is clearly meant to proscribe non-residential uses. Use of the word "shall" in this context cannot be construed to impose a requirement of occupancy. The second clause, beginning after the word "purpose," conditions the shareholder's right to use the project's common spaces and facilities on occupancy of the dwelling unit. At most, this clause might be invoked to bar the Lowys from Bay Terrace's common facilities; it cannot be used to extinguish all the Lowys' rights under the Occupancy Agreement.

Moreover, the evidence before the Court demonstrates that the Lowys do indeed "occupy" their apartment. It is undisputed that the Lowys spend some time each year residing in the apartment, that they maintain some furnishings and housewares in the apartment, and that they have not permitted others to occupy the apartment. Cooper Aff.Ex. M. Certainly the evidence shows that Bay Terrace is not the Lowys' primary residence, but Article Five does not require it to be. A person may occupy more than one dwelling even though only one is his or her "primary residence." Article Five could easily have stated a requirement that plaintiffs maintain their primary residence at Bay Terrace, had that been the parties' intent. As a matter of law, the Court will not write into the contract an absent restriction that could have been included by the parties. *Cabot Corp. v. S.S. Mormascan*, 441 F.2d 476 (2d Cir.), *cert. denied sub nom. John W. McGrath Corp. v. Cabot Corp.*, 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971); *see Benderson Dev. Co., Inc. v. Schwab Bros. Trucking, Inc.*, 64 A.D.2d 447, 409 N.Y. S.2d 890 (4th Dept.1978).

## CONCLUSION

The motion for summary judgment made by plaintiffs Imre and Esther Lowy is granted to the extent that it seeks a declaration invalidating any attempted application of defendant's 1974 Resale Policy to the sale of plaintiffs' shares in defendant Co-op. Defendant's cross-motion for summary judgment dismissing the amended complaint is granted to the extent that the amended complaint seeks a declaration invalidating the application, to the sale of plaintiffs' shares, of defendant's 1976 Rules and Regulations Regarding Sale of Stock. In all other respects, both motions are denied.

## DECLARATION

The Court declares, pursuant to Fed.R. Civ.P. 57:

(1) It is unlawful for defendant Bay Terrace Cooperative Section VIII, Inc. to apply its 1974 Resale Policy to some selling shareholders and its 1976 Rules and Regulations Regarding Sale of Stock to other selling shareholders.

(2) Defendant's 1974 Resale Policy is invalid. Defendant may not apply the terms of the 1974 Resale Policy to any proposed sale of the shares of defendant owned by plaintiffs Imre Lowy and Esther Lowy.

(3) Defendant may lawfully require plaintiff to comply with defendant's 1976 Rules and Regulations Regarding Sale of Stock and the procedures established pursuant to those Rules that are in effect as of the date of this Order. If, and only if, plaintiffs refuse to tender the waiver of option fee required by the 1976 Rules and Regulations, then defendant may exercise its option to purchase pursuant to Article Eight of the Occupancy Agreement.

The Clerk is directed to enter judgment in accordance with the above declaration.

SO ORDERED.