OPINION OF THE COURT
 

 Meyer, J.
 

 A fee on the transfer of shares in a cooperative apartment corporation (commonly called a "flip tax”) may not be imposed by the corporation’s board of directors, when the bylaws of the corporation authorize the board to impose on such a transfer and assignment only "a reasonable fee to cover actual expenses and attorneys’ fees of the Corporation, a service fee of the Corporation and such other conditions as it may determine”. Nor may a flip tax which is not in proportion to the shares held by the assignor be imposed' under either the "cash
 
 *560
 
 requirements” or "assignment” provisions of the proprietary lease, or, in view of the mandate of Business Corporation Law § 501 (c) that each share of stock be equal to every other share of the same class, by amendment of the bylaws. In
 
 Fe Bland v Two Trees Mgt. Co.,
 
 the order of the Appellate Division should, therefore, be affirmed, with costs, and in
 
 330 W. End Apt. Corp. v Kelly,
 
 the order of the Appellate Division should be modified by declaring the resolution imposing a transfer fee invalid, and as so modified, affirmed with costs.
 

 I
 

 A
 

 Plaintiff, Dan Fe Bland, was a resident in the Alwyn Court apartment house when in 1980 it became a cooperative. He purchased 195 shares in 911 Alwyn Owners Corp., the corporation formed pursuant to Business Corporation Law § 402 to carry out the conversion to cooperative ownership and acquired the proprietary lease of a penthouse apartment to which those shares entitled him, paying the insider’s price of $112,125. By resolution of the shareholders adopted at the May 26, 1981 annual meeting and confirmed by a resolution of the board of directors passed on October 6, 1981, the bylaws were amended to provide (art VI, § 4) that "Before a sale of shares * * * takes effect as against the Apartment Corporation, the Assignor shall pay to the Apartment Corporation, in addition to any other fee provided for by the By-Laws and or the Proprietary Lease, a fee equal to $2,500”. An affidavit of the managing agent states that the primary purpose of the $2,500 fee was to raise funds for restoring and maintaining the facade of the building, a registered national landmark.
 

 On October 5, 1983 plaintiff contracted to assign his shares and lease to an outside purchaser for $550,000. The contract required that he pay the corporation’s transfer fee and fixed the date for closing as November 14, 1983. On November 1, 1983 the board of directors, citing as its authorization for so doing article V, section 5 of the bylaws, amended the October 6, 1981 resolution to condition its approval of any assignment upon the payment of a transfer fee in amounts varying from $50 to $200 per share depending upon whether the assignor was an original purchaser from the sponsor or an outsider and
 
 *561
 
 whether he had been an owner for five years or more.
 
 [1]
 
 Notified of the adoption of the resolution and that he would be required at the closing to pay the corporation the sum of $39,000 prior to transfer of his shares, plaintiff protested the requirement. His proposed assignment was approved but at the closing he was required to pay the $39,000 by certified check and to execute a general release in favor of the corporation, the sponsor and the managing agent. That he did under protest and promptly thereafter demanded and was refused return of the $39,000.
 

 Plaintiff then commenced the instant action against the 911 Alwyn Owners Corp., its managing agent and its directors individually. His complaint asserted causes of action for (1) refund of the fee as unauthorized and paid under duress, (2) refund of the fee because it could not be applied to a contract entered into before its adoption, (3) rescission of the general release, and (4) damages in tort against defendants Walentas and Bergin. Defendants moved to dismiss the complaint for failure to state a cause of action and on the basis of a defense founded on documentary evidence (CPLR 3211 [a] [1], [7]) and, in the discretion of the court, for summary judgment pursuant to CPLR 3211 (c). Plaintiff cross-moved pursuant to CPLR 3212 for summary judgment on the first and third causes of action or, alternatively, on the second and third causes of action. Special Term found it unnecessary to consider the retroactivity question. It held the November 1,1983 resolution in violation of the proportionality requirements of the certificate of incorporation and Business Corporation Law § 501 (c) and of the cash requirements provision of the proprietary lease and unauthorized by the proprietary lease (125 Mise 2d 111). It therefore granted plaintiff judgment on the first and third causes of action, dismissed the second cause of action as moot and so much of the fourth cause of action as sought punitive damages, and severed and continued the fourth cause of action. On appeal to the Appellate Division that court affirmed, without opinion, certifying to us the question whether Special Term’s order granting judgment on the first cause of action, as affirmed by it, was properly made.
 

 B
 

 330 West End Apartment Corporation was organized under
 
 *562
 
 the Business Corporation Law in 1980 for the purpose of converting to cooperatively owned apartments a former hotel. Defendant Kelly purchased apartment 7B in the building, receiving at the March 1981 closing of the building conversion 2,700 shares of stock and a proprietary lease, for which he paid $270,000. At its August 10, 1982 meeting the board of directors determined that it was empowered by article V, section 5 of the bylaws, to impose a flip tax on the sale of shares in the corporation
 
 [2]
 
 and voted to impose a fee on all such shares in the amount of 2% of the selling price before deduction of closing costs and commissions.
 

 By notice dated October 1, 1982 the shareholders were informed of the imposition of the fee. Defendant Kelly promptly protested by letter the authority of the board to impose the fee. In July 1983 he transferred his shares and assigned his lease for $315,000 and as a condition of the corporation’s consent to the assignment and transfer was required to pay the 2% flip tax on that sum ($6,300) in addition to a transfer fee of $250 and tax stamps of $135. His attorney having thereafter demanded repayment of the $6,300 as unauthorized, the corporation began the present action seeking judgment declaring the flip tax valid, or in the alternative that defendant had waived his right to challenge it. Kelly counterclaimed for refund of the $6,300 fee and for conversion. Plaintiff moved for summary judgment and Kelly cross-moved for like relief.
 

 Special Term found that the board acted in good faith, that imposition of the fee was reasonably necessary in its business judgment and within the authority of the board under article V, section 5 of the bylaws, but held it to be in violation of the proprietary lease, paragraph 16 (a) (iv) of which required an assignor to pay legal and other expenses but was silent as to a flip tax and paragraph 6 of which required consent of lessees holding at least 75% of the corporation’s shares to a modification of the lease. It, therefore, denied plaintiff’s motion for summary judgment and dismissed defendant’s second counterclaim for failure to allege facts establishing conversion, but granted defendant’s cross motion for judgment on his first counterclaim for return of the $6,300 fee plus interest. The Appellate Division affirmed, without opinion, but granted
 
 *563
 
 plaintiff leave to appeal, certifying to us the question whether its order was properly made.
 

 C
 

 We conclude that although under proper circumstances a flip tax which conforms to the requirements of Business Corporation Law § 501 (c) and of the proprietary lease may be adopted, in the present case (1) neither the bylaws nor the proprietary lease of either corporation authorizes the imposition by the board of directors of a flip tax and the specific references in them to fees on the transfer of shares make inapplicable the business judgment rule advanced by each corporation in justification of the charge imposed; (2) neither corporation’s resolution can be justified by the cash requirements provisions of its proprietary lease; and (3) although the 911 Alwyn Owners Corp. board of directors was authorized by its certificate of incorporation to amend its bylaws, the resolution adopted November 1, 1983, whether deemed to have amended an existing bylaw or to have enacted a new bylaw, was invalid because in violation of Business Corporation Law § 501 (c). We, therefore, affirm in
 
 Fe Bland
 
 and in
 
 330 W. End Apt. Corp.,
 
 modify, the action being one for declaratory judgment, to declare the resolution invalid
 
 (see, Lanza v Wagner,
 
 11 NY2d 317, 334) and, as so modified, affirm.
 

 II
 

 The relationship between the shareholder/lessees of a cooperative corporation and the corporation is determined by the certificate of incorporation, the corporation’s bylaws and the proprietary lease under which a particular apartment is occupied, subject, of course to applicable statutory and decisional law. Inseparably joined, neither the corporate nor the leasehold attributes of the relationship can be viewed in isolation from one another
 
 (Matter of State Tax Commn. v Shor,
 
 43 NY2d 151, 157). Even as to such normally corporate matters as the authority of the board of directors, therefore, it is not just the bylaws that are determinative; the relevant provisions of the related documents must be read together
 
 (Brennan v Breezy Point Coop.,
 
 63 NY2d 1022, 1025; 4B Powell, Real Property ¶ 633.4).
 

 The bylaws of each corporation contain a provision (art V, § 5) entitled "Fees on Assignment” reading, so far as here pertinent, as follows: "The Board of Directors shall have
 
 *564
 
 authority before an assignment or sublet of a proprietary lease or reallocation of shares takes effect as against the Corporation, as lessor, to fix a reasonable fee to cover actual expenses and attorneys’ fees of the Corporation, a service fee of the Corporation and such other conditions as it may determine, in connection with such proposed assignment.”
 
 [3]
 
 The corporations argue that the right to fix "other conditions” empowers the board to impose a transfer fee or flip tax. So to construe the phrase "such other conditions” is, however, to read it out of the context in which it appears, contrary to the usual rule of construction
 
 (People v Mobil Oil Corp.,
 
 48 NY2d 192, 199;
 
 see,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 240). The bylaw is entitled "Fees on Assignment” and specifies three different types of fees (to cover expenses, attorneys’ fees, and services of the corporation) authorized to be imposed upon an assignor. Were it intended to include within the authority granted other fees of an unspecified kind, rather than conditions other than fees, the provision should have referred to "such other fees or conditions as” the board may determine.
 

 The provisions of the proprietary leases of the two corporations confirm that conclusion. So far as here pertinent the assignment provisions of the two leases (par 16 of each lease) are identically worded. Subdivision (a) proscribes assignment or transfer of the lease until specified conditions are met, including "(iv) All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares;” and subdivision (c) provides that "There shall be no limitation,
 
 except as above specifically provided,
 
 on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment.” (Emphasis supplied.) The sums which the directors may fix in connection with an assignment or transfer having been "above specifically provided” constitute an express limitation under the clear wording of subdivision (c) on the right of the directors to withhold consent to an assignment.
 

 
 *565
 
 The business judgment doctrine on which the corporations also rely stands them in no better stead. "That doctrine bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes”
 
 (Auerbach v Bennett,
 
 47 NY2d 619, 629). Although it may protect directors against individual liability to the corporation in a stockholders’ derivative action, it constitutes no grant of general or inherent power in the directors to enforce against a shareholder an edict of the directors beyond their authority to make under either the bylaws of the corporation or, in the case of a cooperative apartment corporation, the contract between the corporation and its shareholder/lessees embodied in the proprietary lease.
 

 Ill
 

 Both corporations rely as well upon the cash requirements provisions of the proprietary lease as authority for imposition of the flip tax. Paragraphs 1 (a) and 1 (c) of both leases are identically worded. Under subdivision (a) rent, sometimes called maintenance, equals that proportion of the corporation’s cash requirements for the year, which the number of shares allocated to a particular apartment bear to the total number of issued shares, and maintenance is payable in equal monthly installments unless the directors at the time they determine cash requirements otherwise direct. As defined by subdivision (c) " '[c]ash requirements’ whenever used” means the amount necessary for operation and improvement of the property, contingency reserves and the payment of liabilities and expenses after giving consideration to income expected and cash on hand. But the subdivision specifically provides that "No determination of cash requirements shall have any retroactive effect on the amount of the rent payable by the lessee for any period prior to the date of such determination”. Paragraph 6 of the 330 West End Apartment Corporation lease also provides that "Each proprietary lease shall be in the form of this lease, unless a variation of any lease is authorized by lessees owning at least two-third of the Lessor’s shares then issued and executed by the Lessor and lessee affected. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of lessees owning at least 75% of the Lessor’s shares then issued, and such changes shall be binding on all
 
 *566
 
 lessees even if they did not vote for such changes, except that the proportionate share of rent or cash requirements payable by any lessee may not be increased * * * without his express consent.”
 
 [4]
 

 The cash requirement provisions are of no avail to 330 West End Apartment Corporation for, although its flip tax is proportional to the profit earned by the assigning shareholder/ lessee, it is not proportional to the number of shares held by that shareholder in relation to the total number of issued shares, as required by paragraph 1 (a) and was not approved by 75% of the shareholders as required by paragraph 6.
 

 Nor are they helpful to 911 Alwyn Owners Corp., for its November 1, 1983 resolution violates both the proportionality requirement of paragraph 1 (a) and the retroactivity proscription of paragraph 1 (c).
 

 IV
 

 So far we have considered only provisions of the bylaws, proprietary leases and decisional law. There remains for consideration the argument advanced in the 911 Alwyn Owners Corp. case that Business Corporation Law § 501 (c) invalidates the flip tax imposed in that case which, as already noted, differed depending upon whether the assignor was a purchaser from the sponsor or an outsider and whether he had been an owner for five years or more.
 

 911 Alwyn Owners Corp. points to its certificate of incorporation which in article Eleventh authorized amendment of the bylaws either by vote of the holders of two thirds of the outstanding shares, provided notice of the amendment or its substance is included in the notice of the meeting or all shareholders are present in person or by proxy, or at any meeting of the board of directors, provided notice of the amendment or its substance is included in the notice of the meeting or all of the directors are present, except that the directors may not repeal a bylaw amendment adopted by the shareholders as above provided.
 

 Plaintiff Fe Bland and the corporation are at loggerheads concerning whether the May 26, 1981 shareholders’ resolution providing for a $2,500 transfer fee was adopted in accordance
 
 *567
 
 with article Eleventh and, therefore, not within the province of the directors to change. The directors on the other hand take the position that they had authority to adopt the November 1, 1983 resolution, either as an amendment of their earlier October 6, 1981 resolution or as an original matter. We do not find it necessary to determine the issue, for the corporation has not sought to offset the $2,500 fee against the $39,000 reimbursement claimed by plaintiff, and we agree with the courts below that even if the November 1, 1983 resolution was within the power of the directors under the certificate of incorporation to adopt, it is nonetheless invalid because in violation of Business Corporation Law § 501 (c).
 

 There can be no question concerning the applicability of the Business Corporation Law, for 911 Alwyn Owners Corp. was formed under that law, and Cooperative Corporations Law § 5 (1) makes the Business Corporation Law applicable to all corporations covered by its provisions.
 
 [5]
 
 Business Corporation Law § 501 (a) authorizes the issuance of stock in classes, and subdivision (c) provides that "[s]ubject to the designations, relative rights, preferences and limitations applicable to separate series, each share shall be equal to every other share of the same class”. The corporation’s certificate authorizes issuance of 10,000 shares "which are to be of the same class, and only one class”.
 

 In a lengthy exegesis of the legislative history and antecedents of Business Corporation Law § 501 (c) the corporation argues that as applied to a corporation with but one class of stock, it is intended to protect only against unequal distribution of corporate assets, not to proscribe a distinction between shareholders the purpose of which is to add to corporate assets. It also points to the requirement of Internal Revenue Code (26 USC) § 216 (b) (1) (A) that to receive favorable tax treatment a cooperative must have only one class of stock and to the reference in the
 
 Shor
 
 case to economic realities (43 NY2d, at p 157) as the predicate for its conclusion that Business Corporation Law § 501 (c) applies only to a corporation which has discretion to create more than one class of stock.
 

 What the first argument ignores is that the history and antecedents upon which it is based concern the Business
 
 *568
 
 Corporation Law or its predecessor, the Stock Corporation Law. The primary purpose of incorporation of such a corporation is, of course, protection of shareholders from having to add to corporate assets beyond the original subscription price (Business Corporation Law § 628), except with respect to wage claims, as to which the Legislature specifically provided for inequality of shareholders, only the 10 largest shareholders being subject to such liability (Business Corporation Law § 630). To follow the argument to its logical conclusion would mean that any business corporation that had a legitimate reason for maintaining a reserve fund could refuse to transfer shares on its books unless the assigning shareholder paid a portion of his or her profit on the stock to the corporation, and that shareholders of the same class could be subjected to unequal requirements. Nor would it help were we to disregard the corporation’s formation under the Business Corporation Law and refer instead to the Cooperative Corporations Law, for section 47 of that law, although it imposes joint and several liability for wage claims on members of a cooperative corporation, provides that otherwise they "shall not be personally liable for its debts, unless otherwise provided in its certificate of incorporation”. No such provision is contained in the incorporation certificate of 911 Alwyn Owners Corp.
 

 Additional evidence that the Legislature did not intend section 501 (c) to permit an unequal assessment against a shareholder/lessee assigning his or her shares is to be found in Banking Law § 632. That section permits the Superintendent of Banks to make an assessment against the shareholders of a banking corporation but requires that such an assessment be of "the equal and pro rata share * * * for each share of stock”.
 
 [6]
 
 That section indicates a legislative policy of equality as to both assessments and distributions and Business Corporation Law § 628 and Cooperative Corporations Law § 47 make clear that when the Legislature intends to depart from the principle of equality of assessment against shareholders it knows how to do so. Having provided in Business Corporation Law § 501 (c) that each share of a corporation such as 911 Alwyn Owners Corp. "shall be equal to every other share of
 
 *569
 
 the same class” and in Cooperative Corporations Law § 5 made the Business Corporation Law applicable to cooperative corporations, excepting from that direction only one clause, irrelevant to the issues before us, of Business Corporation Law § 501 (a), the Legislature clearly did not contemplate that the distribution/assessment distinction on which the corporation relies would authorize departure from section 501 (c)’s requirement of equality among shares of the same class.
 

 The discretion contention can be disposed of more summarily, for it would result in the absurdity that shareholders of the same class could be treated differently if there was but one class of stock but not if there was more than one class. What the subdivision requires is that shares of the same class be equal in all respects to every other share of the class, save only those classes which because they can be issued in separate series may differentiate as to rights and preferences between the separate series. But the Business Corporation Law provides for the issuance in series only of preferred stock (§ 502). Thus equality is required between shares of the same class whether there be one or more classes
 
 (see,
 
 Henn and Alexander, Corporations § 124, at 286; § 160, at 404 [3d ed]); inequality is permitted only as to preferred stock that has been issued in separate series providing for different designations, relative rights, preferences or limitations.
 

 For the foregoing reasons in
 
 Fe Bland Two Trees Mgt. Co.,
 
 the order of the Appellate Division should be affirmed, with costs, and in
 
 330 W. End Apt. Corp. v Kelly,
 
 the order of the Appellate Division should be modified by declaring the resolution imposing a flip tax invalid, and, as so modified, affirmed, with costs to defendant. The certified questions are not answered, the order in each case being final and the questions, therefore, unnecessary.
 

 Chief Judge Wachtler and Judges Jasen, Simons and Titone concur; Judges Kaye and Alexander taking no part.
 

 In
 
 Fe Bland v Two Trees Mgt. Co.:
 
 Order affirmed, with costs. Question certified not answered as unnecessary.
 

 In
 
 330 W. End Apt. Corp. v Kelly:
 
 Order modified in accordance with the opinion herein and, as so modified, affirmed, with costs to defendant. Question certified not answered as unnecessary.
 

 [1]
 

 . Fe Bland argues that the fee increase was retaliatory and in any event could not be imposed upon a sale made prior to its adoption. In view of the conclusions hereafter reached, we do not pass upon either contention.
 

 [2]
 

 . The resolution did not purport to amend either the bylaws or the proprietary lease. The record does not in any event establish what authority the directors had with respect to amendment of the bylaws.
 

 [3]
 

 . In the bylaws of 911 Alwyn Owners Corp. the sentence concludes: "including, without limitation, a credit or title search of the apartment or parties”. That clause is not included in the 330 West End Apartment Corporation bylaw.
 

 [4]
 

 . The 911 Alwyn Owners record does not include the full proprietary lease. Our conclusion in that case is, therefore, reached without reference to the quoted sentences.
 

 [5]
 

 . Paragraph (b) of that subdivision makes the final clause of Business Corporation Law § 501 (a) inapplicable to cooperative corporations but has no effect on the applicability of Business Corporation Law § 501 (c).
 

 [6]
 

 . Liability of shareholders of banks and trust companies was provided for by Banking Law §§ 113-a and 113-b, repealed by Laws of 1984 (ch 360, § 40). Shareholders of credit unions and safe deposit companies may still be liable to such an assessment, however (Banking Law §§ 322, 322-a, 461).