*139 OPINION OF THE COURT
David B. Saxe, J.
This action concerns the right of the board of directors of a cooperative apartment corporation to determine the manner in which the apartment corporation is required to repair and maintain the surfaces of roof terraces in the building.
At the time of the conversion to cooperative ownership, the roof terraces appurtenant to the apartments of the two defendants were surfaced with quarry tile. Because of water leakage, the apartment corporation decided to replace the underlying roof and the surface of the roof terraces. Upon the advice of the cooperative’s architect, the board of directors chose to replace the surface of the roof terraces with removable cement pavers, which would it was felt in the future enable repairmen to gain access to the underlying roof without being required to rip up the quarry tile imbedded in concrete. The defendants have refused to permit the apartment corporation to do so and accordingly the present action was commenced.
The apartment corporation has sought summary judgment on its second cause of action which seeks a declaratory judgment to the effect that the board of directors of the apartment corporation has the sole and exclusive right to determine the type of surface to be placed upon the roof terraces and a permanent injunction directing the defendants to permit the apartment corporation to resurface the roof terraces. Additionally, the apartment corporation in its fifth cause of action seeks an award of attorney’s fees and moves for summary judgment on this cause of action also.
Each of the defendants has asserted three counterclaims against the apartment corporation. The first counterclaim alleges that the apartment corporation has an obligation to the defendants to restore the terrace to its condition immediately prior to the drainage work, and that the failure to do so constitutes "improper discrimination against Yager and Col-let, minority shareholders.” The second counterclaim seeks damages in the amount of $35,000 for failure to replace the quarry tile. The third counterclaim seeks a refund of a proportionate share of the maintenance as a result of the defendants’ inability to enjoy the use of their respective roof terraces since June 1, 1986.
The resolution of this controversy depends upon the authority that the board of directors had to make its determination. First of all, article II, section 7 of the bylaws of the apartment *140 corporation specifically states that "[T]he Board of Directors shall have power to make and change reasonable rules applicable to the apartment building owned or leased by the corporation * * * All house rules shall be binding upon all tenants and occupants of the apartment building”. It is clear then that the bylaws of the apartment corporation specifically delegate to the board of directors the authority to manage the building. This delegation of authority includes the authority to determine the type of surface to be placed upon roof terraces. This authority is also consistent with the terms of the proprietary lease. Paragraph 1 of the proprietary lease provides that the board of directors shall determine what is necessary for the care, operation and maintenance of the building. The individual defendants stress the fact that the description of the roof terraces contained in the offering plan describes the roof terraces as having been surfaced with quarry tile. Nevertheless, that description was nothing more than a visual description of the roof terraces as they existed at the time of the conversion. There is no language in the cooperative offering plan which contractually obligates the apartment corporation to maintain the surface of the roof terraces with quarry tile.
The plaintiff board of directors has the obligation to maintain and repair the terraces. Proprietary lease §2 provides that the lessor (apartment corporation) "shall at its expense keep in good repair all of the building including all of the apartments, the sidewalks and courts surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 thereof.” Paragraph 18 lists various parts of the building which the lessee has responsibility to repair; however, the terrace is not among them.
Inasmuch as the board of directors has the obligation to repair the roof terrace, it should also be able to choose what type of floor surface is appropriate under the circumstances. The exercise of this choice is consistent with the role of the board of directors.
In the course of managing and operating a residential cooperative the board of directors may adopt rules and make decisions in order to effectuate its proper role (330 W. End Apt. Corp. v Kelly; 124 Misc 2d 870 [Sup Ct, NY County 1984], affd 108 AD2d 1107 [1st Dept 1985], mod 66 NY2d 556 [1985]).
*141 In judicial oversight of the rule and decision-making power of the board of directors of a cooperative or condominium, it is first necessary to determine what legal standard to apply. It is generally felt that within a corporate enterprise, responsibility for business judgment must rest with corporate directors whose individual capabilities and experiences peculiarly qualify them for discharge of that responsibility (Auerbach v Bennett, 47 NY2d 619). Accordingly, in Fillman v Axel (63 AD2d 876 [1st Dept 1978]), the court ruled that the board of directors of an apartment corporation had the authority to convert the apartment building’s manually operated elevators. In doing so, the court noted that "[t]he broad powers vested in the board of directors to manage the building clearly encompass the right to make the decisions here challenged. Nothing in the proprietary lease nor the plan of co-operative organization in any way qualifies the power of the board of directors to so act.” (Supra, at 876.) The situation here is clearly analogous.
Absent allegations of fraud or bad faith (and there are none here), this court may not interfere with the operation and management of the building by the board of directors. (Kamin v American Express Co., 86 Misc 2d 809 [Sup Ct, NY County 1976], affd 54 AD2d 654 [1st Dept 1976]; Garrison Apts. v Sabourin, 113 Misc 2d 674.) Consequently, analyzing the facts here pursuant to the standard known as the business judgment rule, the claims of the defendants must fail.
Under a competing standard of review known as the reasonableness standard (see, Abrons Found. v 29 E. 64th St. Corp., 78 AD2d 814 [1st Dept 1980]; Note, Judicial Review of Condominium Rulemaking, 94 Harv L Rev 647, 658-665 [1981]) it is clear that the decision of the board to replace quarry tile with cement pavers was reasonable. There was no representation made that the quarry tile would forever remain on the terraces. Confronted by leaks in the building from the roof and the roof terraces, the board of directors, after consulting with its architect, decided that whenever a problem arose on the underlying roof membrane, it became necessary to tear up the quarry tile in order to investigate the problem and make the repairs. Accordingly, it was felt that it was preferable to replace the surface of the roof terraces with a material which was not cemented to the surface of the roof so, if repairs were required, the surface did not have to be torn up. Relying on the architect’s opinion, the board of directors recommended *142 that concrete pavers be used for the resurfacing of the roof terraces and that quarry tile not be used.
It is apparent that the decision of the board of directors to replace the surface in the manner chosen was reasonable. The use of cement pavers will not alter or diminish the defendants’ use of their roof terraces.
On the basis of the foregoing, the plaintiffs are entitled to summary judgment in its favor on both causes of action. Paragraph 28 of the proprietary lease provides for the assessment of counsel fees and costs in a case such as this one. The counterclaims are likewise dismissed. With respect to the first and fourth counterclaims, it has been demonstrated that there is no legal or contractual obligation on the part of the apartment corporation to replace quarry tile with quarry tile. The claim of "discrimination against majority shareholders” makes no sense. As to the second and fifth counterclaims, since the apartment corporation has not granted permission to the defendants to replace the quarry tile, these claims must fall. Finally, the claims set out in the third and sixth counterclaims must fail because the apartment corporation had a mandate to maintain the structure of the building. Clearly, resurfacing roof terraces in order to alleviate the problem of leaks into apartments beneath them was in fulfillment of that obligation.
Settle an order providing for, among other things, a hearing for the assessment of counsel fees.