BANK OF NEW YORK COMPANY, INC., Plaintiff, v IRVING BANK CORPORATION et al., Defendants.

Supreme Court, New York County, July 6, 1988

### APPEARANCES OF COUNSEL

*Sullivan & Cromwell (John Warden* of counsel), for plaintiff. *Wachtell, Lipton, Rosen & Katz (Marc Wolinsky* of counsel), for defendants.

### OPINION OF THE COURT

HERMAN CAHN, J.

The Bank of New York (BNY) brings this motion seeking a preliminary injunction enjoining Irving Bank Corporation

(IBC) from enforcing the "flip-in" provision of is rights agreement adopted by the board of IBC on May 19, 1988.

BNY seeks a determination that the flip-in amendment is ultra vires as a matter of New York law.

In September 1987, BNY announced its intention of acquiring all of the outstanding shares of IBC.

The court notes that an offer to purchase shares of IBC has also been received from Banca Commerciale Italiana (BCI). By news release dated July 5, 1988, IBC announced that its board determined that the latest BCI "transaction" offer was superior to BNY's "best and final bid."

The court also notes that BNY's approval from the Federal Reserve Board expires on July 9, 1988; although an application for a further extension may be made, there is no assurance that one will be granted.

Further, it should be noted that the court by this decision does not arrive at any decision as to which offer—that of BNY or of IBC is superior, the court does not have a sufficient record on which to make such a decision, insofar as such decision is a "business judgment," it is properly one for the IBC board of directors to make. Only under certain limited conditions will the court consider whether that business judgment should be overruled. Those issues are not now before the court.

This decision concerns itself with the legality of the rights amendment of May 19, 1988.

On October 9, 1987, the IBC board adopted a "rights agreement" as one method by which it could resist the acquisition, unless an offer which it deemed more acceptable was received.

This court previously invalidated an amendment to the rights agreement which restricted the powers of a future board of directors of IBC unless elected in a specified manner.

### The May 19th amendment.

At issue on this motion is an amendment to the rights agreement adopted by the IBC board on May 19, 1988. The amendment has the effect of making acquisition of 20% or more of IBC shares prohibitively expensive and unprofitable unless the IBC board approves such acquisition, at which time the IBC board can have IBC redeem the rights. Commonly

referred to as a flip-in amendment it works as follows: if any person or entity acquires control of 20% or more of the shares of IBC, each right will entitle the holder, with the exception of the 20% or more shareholders, to purchase $400 of IBC common shares for $200.

The amendment expires upon the earlier of all regulatory approval sought by IBC or on April 19, 1989.

This amendment of the rights agreement greatly dilutes the 20% shareholder's equity and voting rights and thus makes acquisition of all or a majority of the shares extremely expensive for the 20% acquirers.

For example, if the flip-in is triggered when the common share of IBC is trading at $72 per share, each IBC right holder, with the exception of the 20% or more holder, will be entitled to purchase from IBC approximately 5$\frac{4}{7}$ shares of IBC for $200, while the 20% holder could buy none from IBC. Thus, all rights holders, except the acquiring shareholder would be able to have more than six shares and votes for each common share previously owned, plus $200.

The acquiring shareholder, through purchases in the open market, could obtain less than three shares per $200 expenditure and thus obtain less than four shares and votes per shares previously owned, plus $200. (If the acquiring shareholder is able to purchase the applicable number of shares in the open market.)

BNY seeks to enjoin enforcement of this provision. This court notes that the flip-in amendment is the only provision of the rights agreement herein contested.

### THE LAW:

Business Corporation Law § 501 authorizes the creation and issuance of shares by a corporation. It directs that "[s]ubject to the designations, relative rights, preferences and limitations applicable to separate series, each share shall be equal to every other share of the same class." (Business Corporation Law § 501 [c].)

BNY argues that the flip-in provision violates Business Corporation Law § 501 (c) in that it discriminates among shares of the same class by entitling all common shareholders, except the 20% shareholder, to exercise the flip-in right to obtain more IBC shares at a bargain price from IBC.

IBC argues (a) that there is no issue of discrimination

among shares, but rather the issue relates to rights issued pursuant to Business Corporation Law § 505 not Business Corporation Law § 501. Said statute (Business Corporation Law § 505) does not contain prohibition against discrimination among rights; (b) that in fact there is no discrimination at all, that is, that all stockholders receive equal rights, that all are subject to their benefits and burdens on equal terms; and (c) that Business Corporation Law § 622 authorizes a corporation to discriminate in the issuance of its shares and/or rights by providing that the preemptive rights of shareholders to preserve their position in a corporation regarding voting and dividend rights allows a provision in the certificate of incorporation which does away with such preemptive rights. (IBC's certificate of incorporation provides that its shareholders do not have preemptive rights.)

Recently the Court of Appeals has interpreted Business Corporation Law § 501 (c) and its mandate that every share shall be equal to every other share in the same class. *Fe Bland v Two Trees Mgt. Co.* (66 NY2d 556) involved a contested transfer fee on the transfer of shares in a cooperative corporation. The transfer fee varied from $50 to $200 per share according to whom the shares had been purchased from and how long they had been owned. The court rejected the argument that Business Corporation Law § 501 (c) was intended "not to proscribe a distinction between shareholders". (66 NY2d, *supra,* at 567.)

The flip-in amendment herein works a similar impermissible discrimination among shareholders of the same class. It favors certain shareholders over others.

IBC argues that such discrimination is permissible in the distribution of rights. (Business Corporation Law § 505.) The same argument was made and rejected in *Amalgamated Sugar Co. v NL Indus.* (644 F Supp 1229, 1235-1236), where the court applying substantially similar provisions of New Jersey law stated as follows:

"[Defendants] assert that Section 14A:7-7 of the New Jersey Business Corporation Act and not 14A:7-1 is applicable to the NLI plan. Section 14A:7-7 authorizes corporations to issue rights to purchase shares of stock from the corporation 'for such consideration, and upon such terms and conditions as may be fixed by the board.'

"The defendants assert that there is nothing in that section, 14A:7-7, that prohibits the terms and conditions fixed by the board from being discriminatory.

"I do not accept that broad reading of 14A:7-7. Such a reading would allow the boards of directors of corporations to circumvent the provisions of 14A:7-1. It is axiomatic that one cannot read one section of a statute to accomplish an end that is impermissible under another section of the statute."

IBC cites *Harvard Indus. v Tyson* (Fed Sec L Rep [CCH] ¶ 93,064, at 95,293 [ED Mich 1986] [1986-1987 Transfer Binder]) for the proposition that cases upholding flip-in provisions are "better reasoned." The court in that case stated (at 95,294): "The Court agrees with the defendant, however, and adopts the position of the better-reasoned cases that such a rights plan does not discriminate among shares but, rather, among shareholders, which is not forbidden."

However, such discrimination among shareholders is specifically prohibited in New York by *Fe Bland (supra)*. Furthermore, to the extent that Business Corporation Law § 501 (c) has since been amended to remove cooperative corporations from the *Fe Bland* reading of section 501 (c), the Legislature has expressed its approval of the *Fe Bland* reasoning as it affects noncooperative corporations.

IBC cites *Moran v Household Intl.* (500 A2d 1346 [Del 1985]) for the proposition that a flip-over rights plan upheld in that case is similar to a flip-in rights provision with which we are concerned here. It's claimed that thus, the flip-in provision should also be upheld. However, a flip-over rights provision entitled all shareholders to purchase shares in an acquiring corporation at a discounted rate. Thus, the evil sought to be addressed herein, that of discrimination among shareholders of the same class of stock, is absent in a flip-over provision.

IBC's argument that Business Corporation Law § 622 authorizes the discriminatory treatment herein is also without merit. BNY correctly argues that the preemptive rights section relates to the potential dilution that existing holders of equity shares "would suffer as a group as a result of the issuance of shares or the granting of rights to purchase shares to non-holders." *(See,* 3 White, New York Corporations ¶ 622.01, at 6-528 [preemptive right is shareholder's "right to purchase or subscribe for newly issued shares before such shares are purchased or subscribed for by *nonshareholders"].)*

In addition, the court will not read Business Corporation Law § 622 to contradict the express mandate of Business Corporation Law § 501 (c), a provision which may not be avoided by provision in the certificate of incorporation.

As to the application herein relating to section 912 of the Business Corporation Law, the Legislature has adopted Business Corporation Law § 912 as a comprehensive defensive mechanism. Through the utilization of section 912, a board of directors can successfully inhibit a hostile or unfriendly takeover for some time, as specifically set forth therein. That an agreeable offer is made under which the shareholders receive the highest value for their corporation is a goal to which the board should subscribe.

The court will not, on the record now before it, direct the IBC board to give approval or waive rights under section 912 of the Business Corporation Law. Such direction could only be made after a complete factual hearing on the issue of the board's exercise of its business judgment.

In conclusion, BNY's motion for a preliminary injunction enjoining enforcement of the flip-in provision of the rights plan adopted on May 19, 1988 is granted.

The plaintiff has demonstrated a likelihood of success on the merits on this issue. Irreparable injury without the requested relief is likely in that without such relief the tender offer, economically, could not be completed within the time limits imposed by regulatory agencies.

Accordingly, the equities tip in plaintiff's favor.