**AVON PRODUCTS, INC., Plaintiff,**

v.

**CHARTWELL ASSOCIATES L.P., Larry Fisher, Zachary Fisher, Arnold Fisher, Richard L. Fisher, M. Anthony Fisher, Argonaut Partners I, L.P., The Gordon P. Getty Family Trust, New Arrow Corporation, Mary Kay Cosmetics, Inc., Mary Kay Corporation, J.R. Investments Corp., Richard R. Rogers, First Chicago Trust Company of New York, and John P. Rochon, Defendants.**

No. 89 Civ. 8032 (PNL).

United States District Court,
S.D. New York.

April 27, 1990.

term interests of Avon's shareholders; and c) that the Plan breaches Avon's fiduciary duty to its shareholders. Avon objects to the court's adjudication of the second and third claims because, it contends, the brief period during which discovery was conducted on these questions did not give Avon sufficient opportunity to develop a full factual record to put before the court. Chartwell contends that there has been adequate discovery, that Rule 57 of the Federal Rules of Civil Procedure contemplates a "speedy hearing" of declaratory judgments, and that Avon has been fully on notice that the evidence now presented would serve as a basis for a final adjudication.

I need not resolve the dispute as to the amenability of the second and third theories to final declaratory judgment on the present record. Both sides agree that Chartwell's first claim has been fully presented to the court with all pertinent evidence and is ripe for final adjudication. I find that Avon's amended Rights Plan violates Section 501 of the NYBCL.

Sullivan & Cromwell, New York City (D. Stuart Meiklejohn, of counsel), for plaintiff.

Willkie Farr & Gallagher, New York City (Philippe Salomon, of counsel), Skadden, Arps, Slate, Meagher & Flom, New York City (Michael W. Mitchell, of counsel), for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action for declaratory judgment. Chartwell Associates L.P. and all other defendants except First Chicago Trust Company of New York ask the court to hold that an amended Rights Plan adopted by Avon Products, Inc. as a defensive maneuver against risk of takeover violates New York law.

Chartwell seeks expedited final determination of three claims: a) that the Rights Plan on its face violates Section 501 of the New York Business Corporation Law ("NYBCL"); b) that the Rights Plan violates Section 505(a)(2)(ii) of that statute because it is not in the best long- and short-

## BACKGROUND

On March 30, 1988, Avon adopted a shareholder Rights Plan, of the type commonly referred to in market parlance as a "poison pill," as a protection against unwelcome takeover bids. The Plan provided for a "Right" to be issued as appurtenant to each share of common stock. Each Right, upon activation, would entitle the holder to purchase from the company a newly issued share of common stock at half the market price, with the exception that the rights appurtenant to shares of a holder of 20% or more of the stock would not participate. The Rights issue was subject to redemption in stated circumstances by Avon's Board of Directors for a nominal price. The Plan provided, however, that ten days following any shareholder's crossing the threshold of 20% ownership, the Rights would become nonredeemable unless the Board previously voted to redeem the Rights. If the ten days expired without redemption, the Rights would activate, or become immediately exercisable (in the vernacular, "flip

in")—permitting all stockholders except the 20% holder (whose Rights are automatically voided) to purchase an additional share of Avon's common stock at half price. The impact of the exercise of the Rights would be to dilute the equity and voting power of a 20% holder to approximately 11%.

On November 13, 1989, Chartwell filed a Schedule 13D with the Securities and Exchange Commission, indicating that it was accumulating stock in Avon for the purpose of acquiring control. On November 16, Avon commenced suit against Chartwell in New York state court seeking a declaratory judgment that its Preferred Rights Plan is valid and that the New York state anti-takeover statute, Section 912 of the New York Business Corporation Law, does not violate the Supremacy Clause and Commerce Clause of the United States Constitution. This action was removed to federal court, and on March 1, 1990, I denied a motion by Avon to remand.

Meanwhile, Chartwell had filed an amended Schedule 13D on February 8, 1990, announcing its intention to commence a proxy contest to place four nominees on Avon's Board of Directors, and sought shareholder lists and other records from Avon. When Avon refused to produce the records, Chartwell moved by order to show cause for an order requiring Avon to furnish shareholder information. On February 23, 1990, I entered an order requiring Avon to produce most of the records demanded by Chartwell.

On March 25, 1990, Avon and Chartwell reached an agreement which would terminate the then existing proxy contest. Among the terms of this agreement were that two of Chartwell's nominees were to be supported for Board election by Avon on May 4, 1990, and that another would be hired as a special consultant to Avon. Following the resolution of the proxy contest, Chartwell indicated that it intended to continue to purchase additional shares of Avon

stock. Avon contended that additional large purchases by Chartwell would be contrary to the spirit of the settlement the parties had reached.

Chartwell continued to make substantial open market purchases of Avon stock, bringing its ownership share of Avon to roughly 12.2%.

On April 5, 1990, Avon amended its Rights Plan. The amended Plan reduced to 12.5% the threshold at which the Rights become nonredeemable without Board action within ten days. If the ten days expire without redemption, the Board no longer has the power to redeem the Rights with respect to any future bid by the 12.5% holder. The amended Plan maintained 20% as the threshold at which the Rights become exercisable. Thus, if the 12.5% holder later crosses the 20% threshold, the Rights of all other shareholders automatically become exercisable, doubling the amount of stock not held by that stockholder.

The effect of this amendment is to make it more difficult for an unwelcome bidder to acquire control. It creates a strong disincentive to cross the 12.5% boundary. Under the original Plan, the bidder might acquire 19.9% without adverse effect and use those stockholdings to seek sufficient influence on over the Board to insure that the Rights Plan will be redeemed upon his crossing of the 20% threshold. Under the amended Plan, the Rights become nonredeemable ten days after crossing the 12.5% threshold. If the bidder is not capable of causing redemption within ten days of his acquisition of 12.5%, he is then assured of having his percentage of control diluted after he crosses the 20% mark.

Shortly after Avon amended its Rights Plan, Chartwell amended its counterclaims in the underlying declaratory judgment action to challenge the lawfulness of the amended Rights Plan, and sought expedited trial of its claim.[1]

---

1. Chartwell asserts that an expedited ruling is needed because it would like to increase its ownership share of Avon to 19.9% before the May 4 election of the Avon Board, after which it contends that open-market purchases will be rendered more difficult by the access of any elected Chartwell nominees to material inside information. Chartwell asserts that the amended Rights Plan effectively precludes it from pur-

## DISCUSSION

Chartwell contends that the Amended Rights Plan violates the "anti-discrimination" provisions of Section 501(c) of the NYBCL, which requires, subject to certain exceptions, that "each share shall be equal to every other share of the same class." The statutory exceptions are primarily those permitted by Section 505(a)(2), which expressly permits a corporation to "void," or preclude the exercise of, rights or options held by an "interested person," a term defined in Section 912 as a holder of 20% of the stock. This exception was inserted into the anti-discrimination statute by legislative amendment on December 21, 1988.

Both sides assume, for purposes of this claim, that the original Plan did not violate the equality requirement of Section 501(c) because it conformed to the exception permitted by Section 505(a)(2), being a voiding of options held by a 20% holder. Chartwell contends that the reduction of the non-redeemability threshold to 12.5% is a discrimination that is not protected by Section 505(a)(2) and violates Section 501(c).

The stated purpose of the New York legislature in enacting the 1988 amendments to Sections 501 and 505 was to allow corporate boards "sufficient time to evaluate offers or bids made by any party for all or part of the shares of the corporation, and to determine and pursue whatever course of action promotes the best long-term interests and short-term interests of the corporation and its shareholders." Legislative Findings and Declaration, Section 1 of L.1988, c. 743. The legislature stated that it found "the ability to restrict or condition the exercise or receipt by certain shareholders ... of rights or options ... will grant additional time to board of directors to evaluate such offers or bids and take appropriate action thereafter."

*Id.*[2] The provision was designed specifically in response to "recent judicial decisions of certain New York courts" which prohibited corporate boards from restricting the rights of interested shareholders, and thus "may have [had] the effect of unduly shortening the time available to such boards to fully and fairly evaluate offers or bids for the corporation's shares." *Id.*

The judicial decision which most directly sparked the legislature's concern, and prompted the amendment of Section 505(a)(2), was *Bank of New York Co., Inc. v. Irving Bank Corp.*, 142 Misc.2d 145, 536 N.Y.S.2d 923 (Sup.1988). In that case, the court found that a "flip-in" amendment to a corporation's rights agreement which entitled all common shareholders except those holding 20% or more to obtain more shares at a bargain price impermissibly discriminated among shareholders in violation of Section 501, because it greatly diluted the equity and voting rights of the shareholder who crossed the 20% threshold. The court enjoined the enforcement of the flip-in provision. *Id.* 536 N.Y.S.2d at 926.

With the enactment of Section 505(a)(2), the legislature made the express decision that a Plan of the sort enjoined in *Bank of New York* could lawfully discriminate against a holder of 20% or more.[3] In selecting the 20% level as the line between permissible and impermissible discrimination, the legislature effected a compromise between the general anti-discrimination norms embodied in Section 501 and the clearly expressed legislative concern about the proliferation of hostile takeovers. The compromise permitted some discrimination against presumed acquirors, but set the level of permitted discrimination at 20% holdings of a company's stock.

There is of course no question that the 12.5% threshold established by the amended Plan is lower than the 20% threshold

---

chasing further Avon stock until the invalidity of the 12.5% threshold has been established.

**2.** Presumably, the extra time would afford the target's board additional time to react to a hostile takeover bid or to explore other alternatives in an effort to maximize stockholder value.

**3.** Thus, the Memorandum of the Assembly Rules Committee notes that the 1988 amendment to Section 505 was intended to permit resident corporations to use poison pill rights plans to prevent or delay hostile takeovers, and to reverse judicial decisions that had declared those poison pills invalid. *See* New York State Legislative Annual 1988, ch. 743, at 298.

permitted by Section 505(a)(2). Chartwell contends that the discriminatory Rights Plan therefore violates Section 501(c). Avon argues that this is not the type of discrimination forbidden by Section 501(c).

Section 501(c), Avon argues, requires only that shares of stock be equal to one another. It does not forbid discrimination against stockholders. Avon argues that the discrimination effected by its amended Plan is against the holders in their role as bidders and that it is not a discrimination between shares of stock, as prohibited by Section 501(c).

I find no merit whatever in Avon's argument. Even accepting its premise that Section 501(c) forbids discrimination only among shares of stock and not among shareholders, it is unmistakably clear that Avon has created a discrimination between shares of stock.

Each share is entitled to one Right under the amended Plan. The Rights in the hands of a 12.5% owner are different from those in the hands of a holder of fewer shares. The Rights in the hands of the 12.5% holder, after the passage of ten days, face the certainty that upon that holder's crossing of the 20% activation threshold, they will be voided while the Rights of all other holders will be exercised. Because the Rights issue became nonredeemable ten days after the crossing of the 12.5% threshold, the Rights of the 12.5% holder enjoy no possibility of a future redemption that would avert the undesirable discriminatory dilution. In contrast, the Rights held by a 12.4% holder carry a significantly different advantageous feature—the continuing possibility of redemption of the Rights issue. The 12.4% holder may exercise influence on the Board in the hope of procuring redemption. Thus, the Rights of the 12.4% holder carry with them an important opportunity not carried by the Rights of the 12.5% holder—the possibility of redemption.

The difference is most clearly illustrated by imagining two nearly identical situations—the acquisition by the holders of 12.5% and 12.4% on a single day of an additional 8% of the Avon stock, bringing the holdings of each above 20%. In the case of the 12.5% holder, the Rights issue will *unavoidably* be activated, with all Rights holders except him purchasing additional shares at a bargain price, substantially diluting his interest. In the case of a 12.4% holder, this disastrous consequence remains avoidable; his Rights enjoy the possibility that within ten days the Rights issue may be redeemed, averting discriminatory exercise and dilution.

The argument that the shares of the 12.5% holder and the 12.4% holder are "equal" to one another has no conceivable merit. The fact that Avon can point to many respects in which the securities are equal is irrelevant. Of course, they enjoy equal voting, dividend and liquidation rights. In addition, the Rights distributed under the Plan enjoy equal right to exercise when activated by *another* holder's crossing of the 20% threshold.[4] They do not, however, enjoy equal access to the redemption of the "poison pill" directed against them. In this respect, the shares are not equal, and the amended Plan therefore violates Section 501(c).

The point can be further illustrated by the following example. Assuming that there are two competing bidders for control; one holds 12.5% of Avon's stock, while the other does not. Each makes a tender offer to acquire control of the corporation. The offeror holding less than 12.5% can

---

**4.** Avon cites *GAF Corp. v. Union Carbide Corp.*, 624 F.Supp. 1016, 1035 (S.D.N.Y.1985), for the proposition that "nothing in New York law requires even-handed treatment of bidders." I find this case inapposite. *GAF* held that it was permissible for a board facing a hostile tender offer to make an exchange offer to repurchase shares of the corporation. The court noted that the exchange offer merely provided shareholders a financial alternative to tendering their shares, and left the potential acquiror free to compete with the exchange offer in the market. Nothing in *GAF* remotely addresses the question raised today—whether a board may take action which forecloses the possibility of redemption of "poison pill" rights in bids by one shareholder but not in bids by others. Moreover, nothing in *GAF* purports to address the anti-discrimination provisions of the NYBCL, much less the specific requirements of Section 505(a)(2), which was amended to its present form three years after the *GAF* opinion was rendered.

offer to buy up to a majority share of the corporation's stock at a stated price, the offer being conditioned on Board of Directors redemption of the Rights Plan within ten days. In contrast, the holder of 12.5% cannot make such an offer; the Board of Directors may not redeem the Rights Plan in connection with his acquisition of 20% or more of the stock. In this sense the stock of the 12.5% holder carries a burden which is not carried by other shares, and is not equal to other shares as required by Section 501(c).

Moreover, Chartwell correctly points out that if Avon can lawfully set 12.5% as the threshold for nonredeemability, it could set the threshold at a much lower percentage as well. The evidence shows that 12.5% was selected by Avon not because of any special logic inhering in that number, but because that was the level which Chartwell had almost reached in its accumulation. Chartwell points out correctly that a Board of Directors through this device could place a formidable obstacle in the path of any accumulation of stock. This is clearly not what the legislature intended to permit when it selected 20% as the dividing line between permitted and prohibited discrimination.

### CONCLUSION

The court finds that Avon's amendment to its Rights Plan violates Section 501(c) of the NYBCL.[5]

Chartwell is entitled to the entry of declaratory judgment.

SO ORDERED.

---

**5.** I express no opinion about the legality of the 20% threshold set by the New York legislature, which is among the issues posed by the underlying declaratory judgment action brought by

Avon. The current motion only challenges Avon's right to amend its Rights Plan to lower the nonredeemability threshold below 20%.