OPINION OF THE COURT
Gilbert Rabin, J.
Petitioner commenced two nonpayment summary proceedings (each petition covers a different period of time), seeking possession of the premises at 309 North Broadway, apartment No. 2-6, Yonkers, New York, on the grounds that respondents failed to pay rent for the months of November 1989 through *1099 May 1990, as well as late charges for delinquent payments of rent for the months of August, and October 1989 through May 1990. Petitioner contends that respondents owe a $30 per month late fee pursuant to the house rules enacted by the cooperative apartment corporation. The court now assumes all rent has been paid, pursuant to the parties’ agreement, and that the actions involve only the question of the late fees.
The parties have agreed that in both petitions the only issues remaining is whether or not the board of directors (hereinafter referred to as the board) of the subject cooperative had the authority to adopt a house rule instituting a flat $30 fee for the late payment of rent for every unit. Both parties have been given the opportunity to file memoranda of law on this issue and both have done so.
In their respective memoranda, the parties discuss certain provisions of the proprietary lease and bylaws of the cooperative. Neither party, however, has provided the court with a complete copy of these documents. The court will therefore assume that since no party contested any cited language, that the sections cited by each party are accurate. The court renders its decision solely upon the papers submitted.
In the instant cases, in 1984, the board adopted a house rule whereby a lessee shall pay a fixed late fee of $25 upon the late payment of rent. In 1989, the board amended this house rule to increase the late charge to $30 for every unit. Respondents contend that the board did not have the authority to institute a flat rate late fee, and by doing so, to override the specific provision in the proprietary lease governing the payment of late fees.
Petitioner claims: (1) that under the bylaws, and the proprietary lease, the board has the responsibility to determine the annual cash requirements of the apartment corporation as well as the power to prescribe the manner in which the shareholder tenants shall pay the cash requirements; (2) that the board is authorized by the proprietary lease and bylaws to adopt and to amend any necessary house rules and that the proprietary lease is subject to such rules; (3) that it was proper for the board to adopt a house rule rather than amend the proprietary lease; and (4) that the proprietary lease provision authorizing the charging of interest on delinquent payments is not the exclusive remedy available to the cooperative for late rent payments under the proprietary lease.
The authority of the board to manage the cooperative and *1100 adopt rules to carry out its general purposes is derived from the corporation’s articles of incorporation, bylaws and the proprietary lease subject to applicable statutory and decisional law. All of these documents must be examined to determine whether a particular action is within the board’s inherent power. (Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 563; 330 W. End Apt. Corp. v Kelly, 124 Misc 2d 870, 873, affd 108 AD2d 1107, mod 66 NY2d 556.)*
Paragraph 12 of the subject proprietary lease states the following: "12. The Lessee will pay the rent, to the Lessor upon the terms and at all times herein provided, without any deduction on account of any set-off or claim which the Lessee may have against the Lessor, and if the Lessee shall fail to pay any installment of rent promptly, the Lessee shall pay interest thereon at the maximum legal rate from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed additional rent hereunder” (emphasis added). The proprietary lease therefore requires that interest be paid as "additional rent” in the event the lessee is late in paying rent.
The subject proprietary lease also sets forth in paragraph 6 the manner in which any changes to the proprietary lease provisions must occur. Paragraph 6 of the subject proprietary lease states the following: "6. Each proprietary lease shall be in the form of this lease, unless a variation of any lease is authorized by lessees owning at least two-thirds of the Lessor’s shares then issued and executed by the Lessor and Lessee affected. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may be changed by the approval of lessees owning at least 65% of the Lessor’s shares then issued, and such changes shall be binding on all lessees even if they did not vote for such changes except that the proportionate share of rent or cash requirements payable by any lessee may not be increased nor may his right to cancel the lease under the conditions set forth in Paragraph 35 be eliminated or impaired without his express consent. Approval by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose” (emphasis added). This paragraph *1101 requires that any changes in the terms of this lease must be approved by the owners of at least 65% of the outstanding shares. Thus, for the board to unilaterally adopt a flat rate late fee appears to be in direct contravention with the manner in which changes to the proprietary lease must be implemented.
Paragraph 13 of the proprietary lease does appear to authorize the board to amend and adopt new house rules. Paragraph 13 also states that the lease shall be subject to such house rules. As petitioner has pointed out, however, while the proprietary lease is subject to the house rules, certain limitations exist on the board’s authority to adopt house rules. One such limitation is that the "house rules may not alter the basic corporate structure of the cooperative or the financial and contractual rights created in the Offering Plan or Proprietary Lease. ” The board has, by adopting a house rule for the payment of a late fee, directly altered a contractual right of the shareholders created by the proprietary lease.
The court finds that the authority of the board here to institute a flat late fee is limited by the specific provisions in the proprietary lease governing the payment of a late fee. "The general power of the board to operate and manage the cooperative does not permit it, unilaterally, to amend a material contractual provision of the proprietary lease in the absence of compliance with the amendment provisions contained therein.” (330 W. End Apt. Corp. v Kelly, supra, 124 Misc 2d, at 873.) The board has not only adopted a house rule that contravenes an express provision in this lease, it has also amended a provision of the lease in a manner contrary to the procedure required for amending said lease. The petitioner justifies the actions of the board by asserting the general powers of the board to oversee the corporation’s cash requirements and to institute house rules for the benefit of the shareholder tenants. While the lease apparently gives the board the general responsibility to oversee the cash requirements of the cooperative, there appears to be no specific provision in the lease or the bylaws cited by either party that gives the board the power over the imposition of late fees. For the same reason, the court finds any argument based on the business judgment rule inapplicable. (See, Fe Bland v Two Trees Mgt. Co., supra, 66 NY2d, at 563.)
In the instant case, the tenant had a clear right under the proprietary lease to pay the specific type of penalty provided for in said lease in the event of lateness. The court finds that *1102 the board exceeded its authority in attempting to change the type of penalty by the procedure of adopting a house rule rather than amending the proprietary lease in the manner set forth therein. (See, Fe Bland v Two Trees Mgt. Co., supra.)
Accordingly, both petitions are dismissed without prejudice to any proper claim for interest under the proprietary lease for any late payment of rents.

 The Appellate Division affirmed the order of the Supreme Court (Special Term) in 330 W. End Apt. Corp. v Kelly (124 Misc 2d 870); the Court of Appeals modified the Appellate Division’s order only to the extent of declaring the flip tax resolution to be invalid, since the action was one for declaratory judgment.